**In re Danny Mack RHODES, a/k/a/ Danny M. Rhodes, a/k/a/ Danny Rhodes, a/k/a/ Dan Rhodes, Debtor.**

**Danny Mack RHODES, Plaintiff,**

**v.**

**Peggy RHODES, Defendant.**

**Bankruptcy No. 7–84–00288 R A.
Adv. No. 84–0070 R.**

United States Bankruptcy Court,
D. New Mexico.

Oct. 29, 1984.

James Lyons, Albuquerque, N.M., for debtor.

Paul Wainwright, Albuquerque, N.M., for Peggy Rhodes.

Bill Sholer, Albuquerque, N.M., trustee.

MEMORANDUM OPINION

STEWART ROSE, Bankruptcy Judge.

The issue in this case is whether a $5,000 lump sum payment, denominated as additional child support in a divorce decree, and payable approximately one year after the divorce, is dischargeable.

The parties, former spouses, separated in August, 1983. A stipulated final decree of divorce was entered January 11, 1984. The debtor filed this adversary proceeding against his former wife seeking a determination that the $5,000 payment is in the nature of a property settlement and there-

fore dischargeable. The contested portion of the decree provides:

"17. The Respondent [husband] shall have an obligation to pay to Petitioner [wife] a lump sum child support payment of $5,000 on or before the 15th day of January, 1985. This lump sum payment will be in addition to the child support obligations Respondent is paying."

At the trial of this matter the wife contended that the provisions of the decree were unambiguous and that this Court could not and should not look behind the terms of the decree. The husband contended that the description of the award in the decree was not binding upon the Bankruptcy Court and that this Court should look behind the same to determine the true intent of the parties. He contended that the Court was required to do this because otherwise the stipulated decree of the parties amounted to a pre-petition waiver of the right of discharge (11 U.S.C. 727(a)(10)). The husband also contended he was coerced into approving the decree and that his agreement should not be binding upon him, in so far as it described the obligation as child support.

With respect to the contention of coercion, the answer is simple. If the State Court ordered the support because the parties agreed to it, then that Court should hear the allegations of coercion. The issue here is the enforceability of the decree, not the agreement of the parties. In so far as this Court perceived otherwise at the time of trial, this Court was in error.

The misapprehension of the issues in this case pervaded the trial. The parties and the Court thought that it was necessary to determine the intent of the parties. The wife attempted to stand on an unambiguous decree of a Divorce Court and the husband rested his claim on the non-waiver provisions with respect to discharge.

The basic error committed by Court and counsel was in failing to read and understand the statute in question. This case should be a lesson to the bench and bar. The issue dealt with a statute. The statute is likely to address all issues. The statute is likely to be a "stand alone" statute. Whether the decree is ambiguous or not, what the intent of the parties may have been, and whether the waiver of discharge statute should be involved were all false issues.

The statute dealt with is 11 U.S.C. § 523(a)(5). Paraphrased, it provides that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt designated as child support in a divorce decree and owed to a former spouse, unless the debt is not actually in the nature of support.

Here, the debt is to a former spouse, and was designated in a divorce decree as child support. Hence there is only one question to be decided: is the debt *actually* in the nature of support?

Since the parties agreed the debt was child support, and the Divorce Court so determined, why should this Court conclude otherwise?

The answer is, as is commonly known, that we all use labels, not to describe accurately a product but, to shape our perceptions of the product. A real estate agent will describe a lot as being beautifully landscaped not because the lot is measurably beautiful, but because the label will influence the perceptions of the prospective purchaser. In the same fashion, lawyers might draft a divorce decree in such a fashion so as to label a debt child support, when the debt is not actually child support, so as to influence the perceptions of those examining or enforcing performance under the document.

In this context it becomes much clearer why what is actually support is a question of federal law, rather than state law, *Calhoun v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983), *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir.1983). It is reasonable to conclude that debts arising from domestic disputes are often labeled as they are for other than purely domestic reasons.

Bankruptcy courts have had difficulty with their inquiries in this area. While some cases have suggested that bankruptcy courts should look to state law for guidance, *Calhoun, supra,* and others have suggested looking at the intent of the parties, *Burk v. Haney (In re Haney),* 33 B.R. 6 (Bankr.N.D.Ala.1983), the better approach to the reasoning necessary for resolution is to cleave to the language of the statute: Is the award *actually* support?

To determine what the award actually is, the label or designation placed thereon in the state court decree provides only an initial perception. As to what the parties intended, that only begs the question. The real questions are why did one party demand the payment, and why did the other party accede thereto? What was the justification put forth in their argument for entitlement thereto? In this case, why did the wife demand and think that she was entitled to demand $5,000 from her former husband? Again, on what legal theory did the Court award her the $5,000 child support payment?

The answer to this question lies in the evidence adduced at the trial. The husband wanted a divorce and wanted it desperately. His financial affairs were in shambles and he was being subjected to substantial pressures by his creditors, including a partner who had raised questions about the husband's use of partnership accounts. The husband wanted to satisfy this creditor, and also to obtain title, free and clear of the wife's claim, to a house which he had owned prior to marriage. He wanted to be able to claim the homestead exemption with respect to that house and to do that in connection with the bankruptcy which he contemplated. The wife wanted $15,000 as a condition to executing the deed to the house. That she may have intended to use that money to improve the lifestyle of her children is irrelevant. Not only is there no evidence to that effect, but it would not explain why she justified making the demand for the sum. There can be no explanation other than the fact that she demanded $15,000 to recompense her for her share of the spousal property. She received $10,000 at the time of the entry of the divorce decree. The husband was unable to raise the additional $5,000 and hence agreed to the payment thereof one year later. He acceded to her demand to secure a division of property. Her theory of entitlement had nothing to do with the future welfare of the children. The divorce decree otherwise provides for monthly payments of child support and for the payment by the husband of certain medical expenses. The evidence suggests no possible conclusion, other than that the debt is not *actually* for support. Therefore, the debt is dischargeable.

The foregoing constitutes the Court's findings of fact and conclusions of law. Counsel for the husband shall prepare an appropriate order and submit the same to the Court within ten days hereof.