**In re Daniel J. SCOTT, III, M.D., Debtor.**

**Laura T. SCOTT, Plaintiff,**

**v.**

**Daniel J. SCOTT, III, M.D., Defendant.**

Bankruptcy No. 94–76092.
Adv. No. 95–8065.

United States Bankruptcy Court,
D. South Carolina.

Oct. 24, 1995.

Elizabeth M. Atkins, Charleston, SC, for Plaintiff.

Elbert M. Rozier, N. Charleston, SC, for Defendant.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER came before the Court upon the Complaint of the Plaintiff, Laura T. Scott, seeking an Order declaring that the obligations owed by Defendant/Debtor should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(5)[1] and § 523(a)(15).[2] Based upon the evidence and testimony presented, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

The Plaintiff and Defendant were married in May 1978.

One child, Laura Alice Scott, was born during the marriage on November 9, 1987. The Plaintiff and Defendant separated in October 1991, when Laura Alice was almost four (4) years old.

Previously Plaintiff had completed college in July 1977 and received a Bachelor of Science degree from the University of North Alabama. Defendant received a Bachelor of Science degree from the University of Den-

---

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only.

2. Prior to the trial, the parties advised the Court that they had reached an agreement regarding the monthly obligation for child support in the amount of $343.00. The parties agreed that the child support obligation was non-dischargeable pursuant to § 523(a)(5).

ver in May of 1977. In July 1979, Defendant began a pre-med curriculum at Memphis State which continued until May 1981. In August 1981, Defendant began medical school at the University of Tennessee Center for the Health Sciences and subsequently graduated from medical school in June 1985.

The employment history of Plaintiff during the marriage is limited to the period when Defendant was enrolled in pre-med or medical school. After Defendant graduated from medical school in 1985, Plaintiff did not work outside the home and the Defendant provided the primary support for the family.

Plaintiff obtained employment shortly before the divorce in December 1992. After six (6) months, her position was terminated due to general economic conditions. Thereafter, she was hired by another manufacturing plant. After eleven (11) months, her position was again terminated when the entire division of the parent corporation was closed. Plaintiff has been employed by her present employer for approximately seventeen (17) months. At a recent staff meeting, she was advised of imminent pay cuts and layoffs because of general economic conditions.

Defendant is currently serving a Family Practice residency at the University of Tennessee. He served as a medical officer in the U.S. Navy for ten (10) years. As a civilian doctor, his income prospects will improve when his residency ends. Defendant is currently seeking a reinstatement of his license from the North Carolina Physician Licensing Board, which had previously restricted his license to practice. Defendant testified that, after a Family Practice residency, his income could be $90,000.00 to $140,000.00, depending on whether he could qualify to deliver children.

On January 4, 1993, a judgment was entered in the General Court of Justice, District Court Division of Onslow County, North Carolina ("January 4, 1993 Order") granting the divorce of Plaintiff and Defendant. Subsequently, on February 4, 1993, a consent judgment ("February 4, 1993 Order") was entered which addressed the remaining issues of child support, child custody, equitable distribution and alimony. A copy of the Separation Agreement and Property Settlement ("Agreement") between the parties was attached to and incorporated into the February 4, 1993 Order.

In the February 4, 1993 Order, the Defendant was required to pay child support in the sum of $650.00 per month and other issues related to the dissolution of the marriage were resolved by the Agreement. The child support obligation has been modified twice since the original judgment was entered. The current obligation is $343.00 per month.

Five additional obligations agreed to by the Defendant/Debtor in the Agreement are the subject of this action. The five obligations include:

1. Maintenance of health insurance for the minor child (Paragraph 5 of the Agreement);
2. One-half (½) of the medical costs of the child which were not covered by Champus or other insurance (Paragraph 6 of the Agreement);
3. Maintenance of life insurance with a face value of $100,000.00 for the benefit of the minor child (Paragraph 8 of the Agreement);
4. Assumption of sole responsibility for marital debts owed to the following creditors (Paragraph 20 of the Agreement);
   a) UBD Master Card
   b) Sears
   c) Dominion Visa (Now First Union)
   d) First Card
   e) Chase Master Card
   f) Montgomery Ward
   g) Choice Visa
   h) Mellon Master Card
5. A monthly payment to the Plaintiff in the sum of $550.00 per month (Paragraph 9 of the Agreement).

Paragraph 9 of the Agreement states that "Husband hereby agrees to pay to wife for her sole use and benefit the sum of $550.00 per month, beginning February 1, 1993 and continuing thereafter in a like amount each month for a period of sixty (60) months or until wife remarries or dies or husband dies, whichever shall first occur." Paragraph 10

of the Agreement expressly waives any other claims Plaintiff may have for alimony, except as expressly stated in the Agreement. Paragraph 27 of the Agreement specifically refers to the Paragraph 9 obligation as alimony and states that the obligation cannot be modified. Paragraph 11 of the February 4, 1993 Order states in full "[t]hat the parties have specifically contracted and agreed that paragraph 9 of the attached Separation Agreement shall *not* be incorporated into and made a part of this Judgment". The 1993 individual income tax returns for Plaintiff and Defendant, respectively, reflect alimony received and paid. Plaintiff's 1994 individual income tax return reflects alimony received, although Defendant declined to adjust his 1994 income for any alimony payment.

## CONCLUSIONS OF LAW

This adversary proceeding was commenced to obtain a determination as to the character of the obligations owed by Defendant to Plaintiff pursuant to the Onslow County District Court orders. No dispute exists that the obligation set forth in Paragraph 4 of the Agreement constitutes a child support obligation that is excepted from discharge pursuant to § 523(a)(5). The issue before the Court is whether the obligations set forth in Paragraphs 5, 6, 8, 9, and 20 of the Agreement should be excepted from discharge. Plaintiff contends that the obligations set forth in those paragraphs are in the nature of support and should be excepted from discharge or, in the alternative, Plaintiff contends that those obligations should be excepted from discharge pursuant to § 523(a)(15) because the detrimental consequences of such a discharge to Plaintiff and the minor child exceed the benefit to Defendant or because Defendant has the ability to pay the obligations from his income.

### I. 11 U.S.C. § 523(a)(5)

Section 523(a)(5) excepts from discharge debts owed to a spouse, former spouse, or child of the debtor if such debt is in the nature of alimony, support or maintenance. Section 523(a)(5) states in full:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

A two-prong test has been applied in determining if a marital debt is non-dischargeable under this section. *In re Carrigg*, 14 B.R. 658 (Bankr.D.S.C.1981). The first prong of the test involves a determination of whether the debt is payable on behalf of the former spouse or child. The second prong of the test involves a determination of whether the debt is in the nature of alimony, maintenance, or support. In *Carrigg*, the Court held that the label attached to the debt is *not* determinative of the issue of dischargeability.

In this matter, the Defendant was required to maintain health insurance and life insurance for the benefit of Laura Alice, the minor child. Defendant was also required to pay one half of the uninsured medical expenses of the child. Further, the Agreement between the parties requires the Defendant to make payments in the sum of $550.00 per month directly to Plaintiff. Accordingly, it appears that the first prong of the test is met as to the obligations in Paragraphs 5, 6, 8, and 9 of the Agreement.

The second prong of the test requires the Court to examine the underlying reasons behind the requirement for one party to make the payment. As stated in *In re Rhodes*, 44 B.R. 79 (Bankr.D.N.M.1984):

... the label or designation placed thereon ... provides only an initial perception. As to what the parties intended, that only begs the question. The real questions are why did the party demand payment and why did the other party accede thereto?

*In re Rhodes*, 44 B.R. at 81. The intent of the parties in the matter before the Court is in dispute. Plaintiff contends that each of the subject paragraphs provides for support to either herself or the minor child. The Defendant denies that the monies are needed to support the daily needs of the family.

In *In re Calhoun*, 715 F.2d 1103 (6th Cir. 1983), four areas of inquiry were established by the Court to assist in determining the true nature of the obligation:

1. Whether the *effect* of the award was to provide support to insure daily needs;

2. Whether the *apportionment* of payment is within the spouses reasonably ability to pay;

3. Whether the *amount* is within the realm of traditional notions of support; and

4. Whether the divorce decree *intended* to provide support.

The obligation to provide health insurance, life insurance and one-half of the uninsured medical expenses of the child are clearly within the traditional notions of support and this Court finds that such were so intended and needed.

In the instant case, it also appears that the award of $550.00 per month had the effect of insuring the daily needs of Plaintiff and the minor child. For ten (10) of the fourteen (14) years of marriage, Plaintiff was not gainfully employed. Since the separation of the parties in October 1991, Plaintiff has held three (3) different jobs. The first job lasted for six (6) months, the second job lasted for nine (9) months and she has held her current employment for approximately sixteen (16) months. Plaintiff has recently been advised of a significant pay cut and the prospect of yet another layoff. It appears that the parties contemplated the $550.00 monthly payment to be in the nature of rehabilitative alimony and provide for the Plaintiff to make the transition from homemaker to provider. Further, it appears that the daily needs of the Plaintiff and child, including the medical and insurance needs of the dependent child, cannot be met solely from Plaintiff's income.

In *In re Boyd–Leopard*, 40 B.R. 651 (Bankr.D.S.C.1984), this Court held that an obligation that terminated upon death of payor or remarriage of payee was indicative of a support obligation and not a property settlement. In *In re Goodman*, 55 B.R. 32 (Bankr.D.S.C.1985), this Court held that if the provisions were unrelated to remarriage of the spouse, then the obligation was indicative of a property settlement and not support. In the within proceeding, the obligations pursuant to Paragraph 9 of the Agreement terminate on the remarriage of the Plaintiff or the death of the Defendant. In 1993 both Plaintiff and Defendant treated the $550.00 monthly payment as alimony for tax purposes. The $550.00 monthly payment to the Plaintiff appears actually in the nature of rehabilitative alimony because Plaintiff had not been gainfully employed during the marriage. Each of these elements are indicative of those payments being in the nature of alimony or support obligations.

Therefore the obligations set forth in Paragraphs 5, 6, 8 and 9 of the Agreement are nondischargeable pursuant to § 523(a)(5).

## II. 11 U.S.C. § 523(a)(15)

On October 22, 1994, the Bankruptcy Code was amended to provide another exception to discharge of debts arising from a divorce decree. Section 523(a)(15) provides that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a. separation agreement, divorce decree or other order of a court of

record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

The amendment was enacted in an effort to remedy the inequities that result when a hold harmless agreement (that is, an agreement wherein a debtor spouse agrees to pay certain marital debts and hold the other spouse harmless) is found not to be in the nature of support but in the nature of a property settlement and therefore not dischargeable under § 523(a)(5). 140 Cong.Reg. H 10770 (Oct. 4, 1994). As the Bankruptcy Court in the Southern District of California recently stated regarding the reasoning behind the enactment of this new section:

> It is basic ... bankruptcy law that support payments are nondischargeable and property settlements are dischargeable. 33 Cal.Jur.3d (Rev) Part 2, Family Law, § 1593 and § 1594 (1994); 3 L. King, Collier on Bankruptcy, P 523.15 at 523–114 (15th ed.1994). Because this frequently enabled debtors to avoid legitimate marital obligations, such as a hold harmless provision like the one in this case, Congress enacted Code § 523(a)(15). Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (codified and amended in various sections of 11 U.S.C.); 3 L. King, Collier on Bankruptcy, P 523.19E at 523–165 to 166 (15th ed.1994).

*In re Huskey,* 183 B.R. 218 (Bankr.S.D.Cal. 1995). Also see *In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995), *In re Hill,* 184 B.R. 750 (Bankr.N.D.Ill.1995), *In re Zeigler,* 1995 WL 512197 at fn. 1 (Bankr.N.D.Ohio 1995).

In a bankruptcy case with facts similar to this case, the Court in *In re Comisky, supra,* in applying § 523(a)(15), examined the ability of a debtor to pay the property settlement under circumstances where the debtor had remarried and his current wife had substantial income. The *Comisky* Court determined that while the debtors' present ability to pay the obligations was limited, an analysis of future income prospects of the debtor was appropriate. The *Comisky* Court analogized the § 523(a)(15) analysis to one undertaken under § 523(a)(8) which deals with non-dischargeability of student loan debts. Pursuant to § 523(a)(8), Courts have consistently considered future income prospects and refused to allow dischargeability as an undue hardship without a showing of a significant permanent reduction in income.

In the instant case, Defendant's household income is approximately $60,000.00, the same as his income during his marriage to Plaintiff. Further, as a physician, he has realistic prospects for increasing his income to as much as $140,000.00 due to his educational credentials and medical degree. The Defendant's schedules indicate a total pre-petition debt of $168,000.00, the majority of which would be discharged in his Chapter 7 case. The joint obligations to be paid on behalf of Plaintiff represent only a fraction of that total debt; approximately $35,354.00 represents the marital debts that Defendant is obligated to pay pursuant to Paragraph 20 of the Agreement. Defendant's original obligation to pay these marital debts was based on Plaintiff's inability to provide for the support of herself and the minor child from her own earnings if payments to creditors were required. Accordingly, in this Court's view, the Defendant has the current ability, as well as the future ability, to pay these marital debts.

Secondly, pursuant to § 523(a)(15)(B), the Court may weigh the respective benefit and detriment to each party if the hold harmless obligation is discharged. The Defendant/Debtor has remarried and has a spouse to help with his household expenses. To the extent that the hold harmless obligation is discharged and the marital debts fall on the Plaintiff, the ability of Plaintiff to support herself and the needs of the minor child will

be threatened. Therefore, the Court finds that the detriment to the Plaintiff and the minor child outweigh the benefit to the Debtor.

## CONCLUSION

Pursuant to § 523(a)(5), Plaintiff has met her burden of proof. The parties have stipulated that the monthly payment of $343.00 for child support is nondischargeable under § 523(a)(5). The Court finds that the insurance obligations for the minor child, which include the health insurance and life insurance, the obligation to pay one-half of the uninsured medical costs, and the obligation to pay $550.00 per month to the Plaintiff, are in the nature of alimony, support or maintenance and therefore non-dischargeable.

The Court further finds that Plaintiff has met her initial burden of showing, under § 523(a)(15), that the hold harmless provisions of Paragraph 20 of the Agreement were incurred by the Defendant in the course of the divorce. Having met her burden, the burden then shifts to the Defendant to show that he falls under one of the exceptions set forth in § 523(a)(15).

Two exceptions are enumerated pursuant to § 523(a)(15). Under subsection (A), the Debtor must show that he does not have the ability to pay the debts from income that is reasonably necessary for his support. For the reasons stated above, this Court finds that the Defendant has failed to meet his burden of proof and, therefore, the hold harmless obligation is non-dischargeable pursuant to § 523(a)(15)(A).

In addition, pursuant to § 523(a)(15)(B), the Court may weigh the respective benefit and detriment to each party if the hold harmless obligation is discharged. For the reasons stated above, the Court finds that the detriment to the Plaintiff and the minor child outweigh the benefit to the Debtor and therefore the hold harmless obligation is also non-dischargeable pursuant to § 523(a)(15)(B). It is therefore

**ORDERED,** that the Defendant's obligations to provide child support of $343.00 per month, health and life insurance, and one-half of the uninsured medical costs for the minor child and to pay $550.00 monthly to the Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5). It is further

**ORDERED,** that the Defendant's obligation to assume responsibility for certain marital debts enunciated herein is non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).

**AND IT IS SO ORDERED.**