In re Steve Westley **ASBILL**, Debtor.

**Michelle Oswald, f/k/a Michelle Smith Asbill, Plaintiff,**

v.

**Steve Westley Asbill, a/k/a Steven Wesley Asbill, Defendant.**

**Bankruptcy No. 98–05819–W.**
**Adversary No. 98–80194–W.**

United States Bankruptcy Court,
D. South Carolina.

March 15, 1999.

---

194

H. Eugene Trotter, Columbia, SC, for plaintiff.

John R. Lester, Columbia, SC, for defendant.

1. The parties have stipulated that in the Decree of Divorce dated January 10, 1995 and the subsequent Order of June 26, 1998 of the Family Court which divided the marital property of the parties, that the Debtor was ordered to pay the sum of $2,500.00 to the Plaintiff for attorney's fees, $109.11 for uncovered medical expenses of the parties' minor child and $5,000.00 to the plaintiff as a property settlement. The parties have stipulated that the $109.11 for uncovered medicals expenses has now been paid. The parties also stipulate that the $2,500.00 award representing the Plaintiff's attorney's fees was incurred as an incident of support and are nondischargeable.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the complaint of the Plaintiff, Michelle Oswald ("Ms. Oswald"), the former spouse of the Debtor/Defendant, Steve Westley Asbill ("Debtor" or "Mr. Asbill"), seeking a determination that a debt in the amount of $5,000.00 arising from the property settlement of the parties[1] in their divorce proceedings is excepted from discharge pursuant to 11 U.S.C. § 523(a)(15).[2]

After receiving the evidence, including the Stipulation of Facts filed by the parties, and weighing the credibility of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[3]

## FINDINGS OF FACTS

Mr. Asbill, filed for relief under Chapter 7 in this Court on July 9, 1998. Ms. Oswald is the ex-wife of the Debtor and a creditor in this Chapter 7 case. The parties divorced in 1995 and a Decree of Divorce with an attached separation agreement was entered on January 10, 1995 ("Decree"). Further marital issues were resolved by a subsequent Order signed on June 24, 1998 which was based on hearings delayed as a result of Mr. Asbill's actions.[4]

2. Further references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.

3. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

4. Subsequent thereto, Mr. Asbill was found in contempt of the Family Court due to his failure to pay the $5,000.00 as ordered. Mr. Asbill filed his bankruptcy petition immediately thereafter.

The Decree and subsequent Order of June 24, 1998 required Mr. Asbill to pay to Ms. Oswald Five Thousand ($5,000.00) dollars as a property settlement. Mr. Asbill was further ordered to pay to Ms. Oswald the sum of Two Thousand, Five Hundred ($2,500.00) dollars towards her attorneys' fees and $109.11 for medical expenses for the parties' minor child.

Mr. Asbill has not paid the $5,000.00 property settlement, which the parties have stipulated is in the nature of a property settlement and not an award of support, and has not paid the $2,500.00 towards Ms. Oswald's attorneys' fees but has paid the $109.11 for uncovered medical expenses for the parties' minor child. Mr. Asbill does not now contest that the award of $2,500.00 towards Plaintiff's attorneys' fees is an incident of support and is non-dischargeable in the Chapter 7 bankruptcy case pursuant to 11 U.S.C § 523(a)(5).

When the parties began divorce proceedings in 1995, Ms. Oswald had an income of $17,984.00 per year while Mr. Asbill's income was $43,602.00, a sizeable portion of which was income derived from his own after hours business called Asbill's Paint & Body, a business run out of a garage located at his residence. The parties placed into evidence the 1991 W–2 wage and tax statement of the Debtor from Corley's Paint and Body Shop which indicated the Debtor made $46,430.00 that year. Ms. Oswald testified that the Debtor had similar income during all of the years of their marriage and the Debtor did not contest this. Since the divorce, Ms. Oswald has continued to work and receive salary increases and in 1998 made approximately $26,000.00. She has also continued her education, started savings accounts for her children and was remarried to Mark C. Oswald, an employee of United Parcel Service who has an annual income of approximately $62,000.00. Mr. Asbill testified that his salary has decreased to approximately $26,000.00 since he has stopped working overtime and has ceased his after hours business.[5] He also has remarried a part-time teacher and student who makes $153.00 per month and he has apparently transferred the after hours business known as Asbill's Paint & Body to his current wife. Once her education is complete, Ms. Asbill's new spouse will have the earning capacity to contribute to the family's budget or, if she does not work, allow her to reduce the significant child care expenses which the family presently incurs.

While Mr. Asbill testified that he deliberately cut back his overtime in the past two years so he could spend more time with his new wife and children and to help prevent another broken marriage, this Court finds that Mr. Asbill is underemployed. By all accounts, it appears that the Debtor has the means and opportunity to supplement his income. Mr. Asbill's business, Asbill's Paint & Body, is already established and has been a regular source of supplemental income in the past. He has the location, the equipment and the skills to carry on that business and, for these reasons, the prospects of additional income do not appear speculative. The Family Court found that the Debtor's earning ability was $3,600.00 per month and this Court likewise finds that, based on the Debtor's long work history and skills, the Debtor has a capacity to earn at least $3,600.00 per month.[6]

---

5. Mr. Asbill testified that he estimated his 1998 income to be about the same as the 1997 salary of $25,528.00.

6. The Family Court, in its order of June 24, 1998, made a similar finding.

In addition, Plaintiff [Ms. Oswald] testified that the Defendant [Mr. Asbill] has done extra work of painting vehicles. Plaintiff testified that she has seen cars with primer on them at Defendant's father's place where he had done work on the side in the past. The Defendant testified that he was not doing work but another relative was doing that work. The Court does not find the testimony of the Defendant regarding his income to be credible. This Court finds that the Defendant is underemployed.

According to the Stipulation filed by the Debtor on October 20, 1998 in connection with a Motion for Relief from Stay, the Debtor presently has at least $3,300.00 in equity in the marital residence.

Ms. Oswald has custody of the sole child born into her marriage with Mr. Asbill and Mr. Asbill pays child support in the amount of $116.61 per week.

## CONCLUSIONS OF LAW

When Mr. Asbill and Ms. Oswald divorced and divided their assets and liabilities, Mr. Asbill was allowed to keep the marital residence subject to paying Ms. Oswald's share of the equity in the house. While Mr. Asbill continues to live in the house in which there is equity, he now wants to discharge the award of $5,000.00.

Divorce property settlements are generally dischargeable in bankruptcy; however, two exceptions are found in § 523(a)(15). Section 523(a)(15) provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) [alimony, maintenance or support] that is incurred by the debtor in the course of divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

■ Having met the prerequisites of § 523(a)(15) based upon the stipulation of the parties that the $5,000.00 debt is a debt not of the kind described in paragraph § 523(a)(5) and was incurred by the Debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court, the Court must first determine whether the Debtor has the ability to pay the debts pursuant to § 523(a)(15)(A). The burden of proof under this subsection, as well as the burden under § 523(a)(15)(B), falls upon the Debtor and that burden of proof must be met by a preponderance of the evidence. *In re Campbell,* 198 B.R. 467 (Bkrtcy.D.S.C. 1996) and *In re Scott,* 194 B.R. 375 (Bkrtcy.D.S.C.1995).

■ Pursuant to § 523(a)(15)(A), the Court must apply an "ability to pay" test which equates to the Chapter 13 confirmation "disposable income" test of § 1325(b)(2). *In re Campbell,* 198 B.R. at 473, 474 citing *In re Hill,* 184 B.R. 750, 754, 755 (Bkrtcy.N.D.Ill.1995).

■ Considering his work history and apparent good health, Mr. Asbill is capable of earning at least $3,600 per month to support his family and pay his debts, an amount which is approximately equal to the monthly living expenses stated in his bankruptcy schedules.

However, a review of these living expenses leads this Court to conclude that some are overstated or not reasonably necessary to be expended for the maintenance and support of the Debtor and his dependents. Even considering Mr. Asbill's agreement to pay the nondischargeable attorneys fees and without ascribing a value to Mr. Asbill's wife's future contribution to the family's living expenses, it appears that the Debtor has at least $200.00 per month in disposable income which is avail-

able to pay the indebtedness to Ms. Oswald. Even considering unforeseen living expenses, Mr. Asbill has the ability to pay the debt to Ms. Oswald within a reasonable period of time of three to five years.

Considering these factors, the Court finds that pursuant to § 523(a)(15)(A), Mr. Asbill has failed to meet his burden in demonstrating that he does not have the ability to pay the debt to Ms. Oswald.

■ However, because the tests under § 523(a)(15) are disjunctive, the Court must now determine, pursuant to § 523(a)(15)(B), whether the detrimental consequences to Ms. Oswald are outweighed by the benefit of the Debtor's fresh start.

To properly balance the equities, the court should consider, at a minimum, the following factors:

1. The amount of debt involved, including all payment terms;

2. The current income of the debtor, objecting creditor and their respective spouses;

3. The current expenses of the debtor, objecting creditor and their respective spouses;

4. The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;

5. The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting creditor and their respective spouses;

6. The health, job skills, training, age, and education of the debtor, objecting creditor and their respective spouses;

7. The dependents of the debtor, objecting creditor and their respective spouses;

8. Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;

9. The amount of debt which has been or will be discharged in the debtor's bankruptcy;

10. Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and

11. Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the § 523(a)(15) issues.

*Smither,* 194 B.R. at 111.

*In re Armstrong,* 205 B.R. 386 (Bkrtcy. W.D.Tenn.1996). Also see *In re Celani,* 194 B.R. 719 (Bkrtcy.D.Conn.1996). In making this determination, the Court believes the relative income, expenses, and worth of the new spouses of the parties is relevant.

■ Ms. Oswald is a 29–year–old bookkeeper and makes $12.75 per hour and averages 40 working hours per week. She is the mother of two minor children and is also enrolled as a student and testified that she had been attempting to complete her college education over a course of many years by going to school part time while working to support her family.

Ms. Oswald further testified that she has several student loans and tuition payments that she is paying as they become due and that she currently owes about $1,800.00. She originally intended to go back to school full time two years ago to complete her education but because Mr. Asbill did not pay the $5,000.00, she was forced to continue her full time employment and go to school part-time.

Ms. Oswald also testified that she and her current husband have significant living expenses, including a second mortgage on their house in the approximate amount of $20,000.00 on which they make monthly payments and that she contributes $100.00 each month into college savings accounts for each of her two sons.

Ms. Oswald also testified that she has paid $6,133.00 in attorney's fees arising from the divorce and that she continues to owe approximately $1,800.00. She also

testified that these amounts did not include the attorney's fees incurred in this adversary proceeding.

Mr. Asbill testified that he is currently employed full time by Southern Truck and has been continuously engaged in the auto painting and bodywork industry since prior to 1991. Ms. Oswald testified that the Debtor had income in the range of $43,000 to $46,000 during all of the years of their marriage and the Debtor did not contest this. In addition, as stated previously, the Lexington County Family Court found Mr. Asbill's testimony that he no longer does body work on the side not credible and that Mr. Asbill was voluntarily underemployed, and this Court agrees.

Other Courts have recognized that a debtor's underemployment is a factor to consider in making an analysis under § 523(a)(15)(B). In a recent opinion from the Seventh Circuit Court of Appeals, the Court remanded the case to the Bankruptcy Court to consider additional factors including the underemployment of the debtor.

> The Court is concerned about the fact that Plaintiff does have much greater earning capacity and that she is voluntarily underemployed at this time. While the Court finds that Plaintiff may have valid reasons for not returning to the medical field, it has been held that where either a debtor or a creditor has voluntarily reduced their income, that voluntary reduction should be considered by the Court in making the evaluation under § 523(a)(15)(B). See *In re Smither*, [194 B.R. 102 (Bankr.W.D.Ky. 1996)] supra at 111.

*In re Jenkins*, 202 B.R. 102 (Bkrtcy. C.D.Ill.1996). Also see *Matter of Crosswhite*, 148 F.3d 879 (7th Cir.1998), *In re Huddelston*, 194 B.R. 681 (Bkrtcy.N.D.Ga. 1996) and *In re Greenwalt*, 200 B.R. 909 (Bkrtcy.W.D.Wash.1996).

Initially, the Court is mindful that Mr. Asbill is discharging over $10,000 of other debts in this proceeding and retains the marital residence, in which there is equity and on which the subject debt is based.[7]

Additionally, considering Mr. Asbill's voluntary underemployment, his delay of the Family Court hearing which led to the 1998 Order, and his inconsistent statements regarding the operation and ownership of Asbill's Paint and Body, the Court questions his good faith in filing bankruptcy and in conducting this dischargeability litigation.

■ Finally, while there is no doubt that the income of Ms. Oswald and her current husband exceeds even the imputed income of Ms. Asbill and his current wife and that neither party presented complete information regarding the current living expenses and liabilities of the respective families, this Court declines to adopt a rule that would deny recovery to Ms. Oswald under § 523(a)(15)(B) simply because she and her current husband are both working hard to provide for their dependants and raise their standard of living to a level which may exceed the standard of living presently chosen by the Debtor and his current wife. Rather than adopting a *per se* rule under which the party with the higher income or standard of living loses under § 523(a)(15)(B), the Court must weight the needs of the parties and balance the equities under the specific facts of each case. In this case, the evidence indicates that if this debt is not discharged, the Debtor should be able to meet his living expenses without detriment to his family or the lowering of his standard of living. Upon the completion of his current wife's education, she may contribute to the family's income or at a minimum reduce the significant child care expenses which the family presently incurs. If, however, the debt is discharged, Ms. Oswald will not be able to complete her education in as timely a fashion nor pay her student loans

---

7. The Court notes that of the $18,350.00 in unsecured debt which Mr. Asbill is attempting to discharge, $7,500.00 of that debt is owed to Ms. Oswald.

and attorneys fees debt as she had contemplated nor save for the educational benefit of the child of the Debtor and Ms. Oswald. In such a situation, the equities and factors to be considered under § 523(a)(15)(B) weigh in favor of Ms. Oswald.

Considering the totality of each party's circumstances, including the lack of good faith in the Debtor's conduct, this Court concludes that the Debtor has failed to meet his burden under § 523(a)(15)(B) of convincing the Court that the benefit of the discharge of this debt outweighs the detrimental consequences to Ms. Oswald and the child of the Debtor.

For all of these reasons, it is the finding of the Court that the $5,000.00 debt owed to the Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

Additionally, based upon the stipulation of the parties, the debt in the amount of $2,500.00 to the Plaintiff as reimbursement of attorney's fees is also nondischargeable.

**AND IT IS SO ORDERED.**