**In re Gary HODGE, Debtor.**

**Shelly Hoening Bullock, Plaintiff,**

**v.**

**Gary Hodge, Defendant.**

**Nos. 00–3320, 00–34263.**

United States Bankruptcy Court,
N.D. Ohio.

July 11, 2001.

William E. Huber, Saint Marys, OH, for plaintiff.

Athena Nyers, Lima, OH, for defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to determine the dischargeability of a marital debt. The specific debt at issue was jointly incurred by the Parties during their marriage to one another; to wit, a debt to CitiFinancial, Inc. in the amount of Ten Thousand dollars ($10,000.00). With respect to this debt, the undisputed facts of this case show that: (1) the Defendant listed this debt in his bankruptcy petition which was filed on October 6, 2000; (2) after the Parties' divorce on March 11, 1998, the Defendant, for approximately a year and a half, made periodic payments on this debt; and (3) on January 23, 2001, a default judgment, in the amount of Eight Thousand Two Hundred Eighty-five and 88/100 dollars ($8,285.88), was entered by CitiFinancial, Inc. against the Plaintiff for nonpayment of this debt.

The statutory authority upon which the Plaintiff relies to have the Defendant's obligation to pay the CitiFinancial debt held nondischargeable is based solely on the exception to discharge contained in § 523(a)(5) of the Bankruptcy Code; this section provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance,

or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

In support of her compliance with the requirements of this section, the Plaintiff, at the Trial held on this matter, made the following assertions:

First, the Plaintiff contends that at the time of the Parties' divorce, the Defendant was better equipped to pay the debt to CitiFinancial. In this regard, evidence was introduced that when the Parties divorced, the Defendant, who was then employed as a Truck Driver earning approximately Fourteen dollars ($14.00) dollars per hour, had a significantly higher salary than that of the Plaintiff. In addition, it was also established that presently the Defendant's monthly salary is over Two Thousand Four Hundred dollars ($2,400.00) per month. Along this same line, it was shown that the Defendant's new wife presently receives One Thousand Five Hundred dollars ($1,500.00) per month in disability pay.

Second, according to the Plaintiff's testimony, the Parties' had agreed that the Defendant was to be solely responsible for the CitiFinancial debt. In this regard, the Plaintiff testified that the proceeds received from the debt incurred with CitiFinancial were used primarily to pay obligations obtained by the Defendant alone; specifically, the Plaintiff stated that the moneys received from the CitiFinancial loan were used to pay off the Defendant's credit card obligations and were also used to satisfy an obligation incurred by the Defendant to purchase a Harley motorcycle.

Finally, in support of her position under § 523(a)(5), the Plaintiff related to the Court that her salary as a hairdresser is insufficient to cover the debt to CitiFinancial. In this regard, the Plaintiff stated that her income of One Thousand One Hundred Sixty-six dollars ($1,166.00) per month is insufficient to meet her monthly expenses which run approximately One Thousand Three Hundred Seventy-six dollars ($1,376.00). Further, according to the Plaintiff, her inability to pay the CitiFinancial debt, in addition to causing her great consternation, has greatly impacted her ability to obtain credit.

In opposition to the Plaintiff's compliance with § 523(a)(5), the Defendant stated that although he had agreed to assume the CitiFinancial obligation, he never intended this debt assumption to constitute a support obligation for the Plaintiff. In fact, the Defendant related to the Court that he had simply agreed to assume the CitiFinancial loan because otherwise the bill would not get paid. With respect to this argument, the facts presented in this case show that the separation agreement entered into by the Parties, which was later incorporated into the Parties' divorce decree, stated:

> Husband and Wife do each waive any claim against the other for spousal support.
>
> Husband and Wife agree to be solely responsible for his or her individual debts, and each agrees to hold the other free from liability for any of the vehicles or other property assigned to the former herein.

Parties' Separation Agreement, at paragraphs 4 & 5.

## LEGAL DISCUSSION

Proceedings brought to determine the dischargeability of a particular debt are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Thus, this case is a core proceeding.

The Plaintiff's complaint to determine the dischargeability of the CitiFinancial loan obligation is brought solely in accor-

dance with the exception to discharge contained in 11 U.S.C. § 523(a)(5). Under § 523(a)(5), generally those debts owed to a former spouse are not entitled to the benefits of a bankruptcy discharge; section 523(a)(5) thus encapsulates the general bankruptcy policy of favoring domestic support obligations over the debtor's need for a fresh start. *See, e.g., Williams v. Kemp (In re Kemp)*, 242 B.R. 178, 183 (8th Cir. BAP 1999), *aff'd*, 232 F.3d 652 (8th Cir.2000). Section 523(a)(5)(B), however, provides a caveat: Only those debts which are "actually in the nature" of maintenance or support are excluded from the scope of a bankruptcy discharge. In this regard, the Defendant contends that since the Parties' separation agreement provided that no spousal support was to be awarded, the Defendant's obligation to pay the CitiFinancial obligation was not in the nature of support for purpose of § 523(a)(5).

■ In *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983), the Sixth Circuit Court of Appeals specifically addressed the issue of what types of martial obligations are actually in the nature of support for purposes of § 523(a)(5). In doing so, the Court held that, at a minimum, the parties to the separation agreement must have intended to create a support obligation. *Id.* at 1109 ("the initial inquiry must be to ascertain whether the state court or the parties to the divorce intended to create an obligation to provide support through the assumption of the joint debts.") As for when the intent to create a support obligation will be found to exist, this specific issue was later addressed by the Sixth Circuit in *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397 (6th Cir.1998).

■ The *In re Sorah* case involved a divorce decree which awarded the debtor's ex-wife monthly payments; these payments, in turn, were to terminate upon either death, remarriage or a specified age of the debtor's ex-wife. In making this award, the state court specifically stated in the parties' decree of divorce that such payments were for the maintenance of the debtor's ex-wife. After the debtor filed for bankruptcy relief, the debtor's ex-wife brought an action to have this debt held nondischargeable under § 523(a)(5). The bankruptcy court, however, dismissed the ex-wife's complaint on the grounds that the debtor's monthly payment obligations were not in the nature of maintenance or support. On appeal, the Sixth Circuit reversed. In doing so, the Sixth Circuit chastised the bankruptcy court for second-guessing the state court determination that an award of spousal support was warranted; in the words of the Sixth Circuit: a bankruptcy court should not "assume the role of a psychological examiner, probing the state court's decision for linguistic evidence of ulterior motives." *Id.* at 402. To do otherwise, it was noted, would place the bankruptcy court in the role of a super-divorce court. *Id.* Accordingly, the Sixth Circuit in *In re Sorah* held that an award that is specifically designated as support by the state court, and that has all the indicia of support, should be conclusively presumed to be a support obligation for purposes of § 523(a)(5). *Id.* at 401. In reaching this decision, the Sixth Circuit heeded the well-know euphemism that "if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck." *Id.*

■ The facts of the instant case, of course, differ partly from the situation present in *In re Sorah* in that the underlying divorce decree in *In re Sorah* specifically labeled the parties' martial obligation as support, while the Parties in this case did just the opposition, stating that the Parties "do each waive any claim against the other for spousal support." The

Court, however, given the admonition in *In re Sorah* that a bankruptcy court should not second-guess state court support obligations, can see no reason why the tenets set forth in *In re Sorah* should not be equally applicable to the situation where, as in this case, it was specifically stated that no alimony would be awarded to either Party. Stated in more precise legal terms, when a divorce decree or separation agreement holds that no spousal support shall be awarded to either party, any obligations contained therein should be viewed as a property settlement—and thereby subject to 11 U.S.C. § 523(a)(15)—unless it can be clearly and unequivocally shown by the context of the divorce decree or separation agreement that it was the intent to create a support obligation.

◼ In *In re Sorah*, the Sixth Circuit held that in determining whether there existed the requisite intent to create a support obligation, a bankruptcy court should "look to the traditional state law indicia that are consistent with a support obligation." *Id.* at 401. According to the Court in *In re Sorah*, these indicia include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits. *Id.* In this case, of course, it is clear that none of these indicia are present; in particular, there is no disagreement among the Parties that the Defendant's obligation to pay the CitiFinancial obligation was accomplished by the assumption of a third-party debt, or that the assumption of this debt was in some way contingent upon an event such as death, remarriage or eligibility for Social Security benefits. The Plaintiff, however, has asserted that because the Defendant's assumption of the CitiFinancial debt would have the effect of providing necessary support, the obligation should be viewed as such.

◼ With respect to the Plaintiff's argument, the Court does agree that the Plaintiff's financial situation, being somewhat precarious, would be benefitted by the Defendant paying the Parties' CitiFinancial obligation. However, this fact, standing alone, does not transform an otherwise dischargeable obligation into a nondischargeable debt under § 523(a)(5). In fact, if this were not the case, then all marital obligations would be nondischargeable—thereby rendering § 523(a)(15) superfluous—as all creditor-spouses would in some way benefit by a marital debt being paid by the debtor-spouse. *See Luman v. Luman (In re Luman)*, 238 B.R. 697, 704 (Bankr.N.D.Ohio 1999). In addition, the Court notes that awarding spousal support is a fairly rare occurrence today despite the fact that many parties who go through a divorce struggle to maintain financial stability. Thus, it is the position of this Court that merely because a nondebtor spouse would benefit by their former spouse paying a marital debt, will not, without more, create a nondischargeable support obligation under § 523(a)(5) where, as is the situation here, (1) neither of the traditional indica of support specifically set forth in *In re Sorah* are present, and (2) the parties' separation agreement specifically provides that no spousal support is to be awarded to either party. Accordingly, for the foregoing reasons, the Court finds that the Defendant's obligation to CitiFinancial is not a support or maintenance obligation within the meaning of 11 U.S.C. § 523(a)(5).

Before concluding one final point raised by the Plaintiff needs to be addressed. In support of her position that the Defendant's obligation to pay the CitiFinancial

debt is nondischargeable under § 523(a)(5), the Plaintiff, in her closing arguments to the Court, cited to two cases: *Scott v. Scott (In re Scott)*, 194 B.R. 375 (Bankr.D.S.C.1995) and *Barnes v. Barnes (In re Barnes)*, 218 B.R. 409, 411 (Bankr. S.D.Ohio 1998). However, the persuasive authority of these cases, for the following reasons, is de minimis: First, with regards to the *In re Scott* case, the debts found nondischargeable therein were specifically those types of debts normally associated with support obligations. For example, the bankruptcy court in *In re Scott* found nondischargeable a direct monthly payment obligation of Five Hundred Fifty dollars ($550.00); on the other hand, the bankruptcy court did not find that the debtor's assumption of certain third-party credit card obligations were included within the scope of § 523(a)(5). *In re Scott* 194 B.R. at 378. In addition, the Court notes that even if this case were directly on point, the persuasive value of the decision is suspect since it was rendered prior to the time the Sixth Circuit Court of Appeals issued its ruling in *In re Sorah*. Second, with respect to the *In re Barnes* case, the Court cannot find that this decision is at all applicable to the facts of this case because in *In re Barnes*, the bankruptcy court's decision to hold the debts therein nondischargeable was based on the exception to discharge contained in § 523(a)(15), and not § 523(a)(5).

In summation, the Court, based upon the Sixth Circuit's holding in *In re Sorah*, cannot find that the Defendant's obligation to pay the Parties' debt to CitiFinancial Corporation falls within the exception to discharge contained in 11 U.S.C. § 523(a)(5). In coming to this conclusion, the Court relied primarily upon two considerations: First, the Parties' separation agreement specifically provided that no spousal support was to be awarded to either party; second, the Defendant's obli-

gation to pay the debt to CitiFinancial Corporation does not have the major characteristics normally associated with a support obligation.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the obligation of the Defendant, Gary Hodge, to pay the debt the Parties' jointly incurred with CitiFinancial, Inc., be, and is hereby, determined to be a dischargeable debt in bankruptcy.