WHEELER and Another *v.* ME-SHING-GO-ME-SIA.

PLEADING.—*Justification.*—An answer setting up matter in justification of acts therein mentioned, but not indicating the acts justified as the acts complained of, is bad on demurrer, but may be good as an affidavit against a temporary restraining order.

TRESPASS.—*License.*—One in whom is vested the legal title in fee in trust for himself and others cannot maintain trespass against a person whom he has himself licensed to do the acts complained of.

WASTE.—*Tenants in Common.*—One tenant in common may be liable to his co-tenant for waste.

SAME.—*Pleading.*—An averment in a complaint, that the trees cut, "as a part of the inheritance to which they attached, are not capable of being valued," is not an allegation that the land has been diminished in value as an inheritance.

SAME.—*Common Law.*—The common law doctrine that the cutting of standing trees is waste, does not apply to the members of a band of Indians in the use of a large tract of wild land in this State granted to them by the United States.

INDIAN RESERVATION.—*Ultimate Title.*—A reservation of land in an Indian treaty of cession simply secures to those in whose favor the reservation is made a continuation of the right of occupancy in the land reserved, while the ultimate title remains in the United States, as before the treaty.

PRACTICE.—*Supreme Court.*—It will be presumed by the Supreme Court, nothing appearing to the contrary, that the court below tried the cause on the theories of the law as ruled on demurrers in making up the issues.

APPEAL from the Wabash Circuit Court.

GREGORY, J.—Suit by the appellee against the appellants for a trespass in entering upon the land described in the complaint, and setting up a portable saw-mill, and cutting a large quantity of walnut trees and converting them into lumber. The complaint avers, that the "trees as a commercial article were worth, standing upon the land, ten dollars each, and as a part of the inheritance to which they attached, are not capable of being valued." The complaint avers title under the treaty with the Miami tribe of Indians, made the 28th day of November, 1840. By the 7th article of that treaty, it is stipulated " that the United States convey by patent to Me-shing-go-me-sia, son of Ma-to-sin-ia, the tract of land reserved by the second article of the

treaty of the 6th of November, 1838, to the band of Ma-to-sin-ia."

By the second article of the treaty referred to, it is provided that, "from the cession aforesaid, the Miami tribe reserve for the band of Ma-to-sin-ia, the following tract of land, to wit: Beginning on the eastern boundary line of the big reserve, where the Mississinnewa river crosses the same; thence down said river with the meanders thereof to the creek called Forked Branch; thence north two miles; thence in a direct line to a point on the eastern boundary line two miles north of the place of beginning; thence south to the place of beginning, supposed to contain ten square miles."

The seventh article of the treaty made November 28th, 1840, *supra*, was amended as follows: "at the first period, insert—to be held in trust by the said Me-shing-go-me-sia, for his band; and the proceeds thereof, when the same shall be alienated, shall be equitably distributed to said band, under the direction of the President."

It is averred in the complaint, that the plaintiff sues for himself and some thirty-eight others named, who, it is alleged, compose the band of the plaintiff; that many of the persons named are minors, and some are married women.

The appellant Fowler answered: first, by the general denial; second, that the acts done were by the plaintiff's license; third; that Wa-co-co-nah was and is of the band of Me-shing-go-me-sia, and one of the beneficiaries of the land, and by consent of the plaintiff and the members of the band established himself on the south side of said reservation, at the mouth of Grant creek on the Mississinnewa river, many years since, and was allowed to exercise jurisdiction, authority, and control over about four hundred acres of the reservation, including all that portion where the mill was erected, the trees cut, and the other alleged grievances committed; that Wa-co-co-nah was permitted by the plaintiff and others of the band to open farms, grant leases, cut timber, build houses, and make other improvements on said tract, which was called the allotment of Wa-

co-co-nah; that Wa-co-co-nah was recognized for a long series of years as entitled to exercise exclusive authority over said tract of land; that the plaintiff and all the leading members of the band had seen these improvements being made from time to time, the borders of the clearings extended year by year, and leases multiplying, without objection; that Wa-co-co-nah after all this, on the 12th of April, 1863, entered into a contract with Wheeler (the co-defendant), a copy of which is made a part of the answer, by which the former sold to the latter two hundred walnut and cherry trees then standing on the land allotted to the former, with the right to enter upon the land, erect a portable sawmill, cut and convert the trees into lumber, and take it away; for which the latter was to pay the former two dollars for each tree; that the plaintiff well knew of the contract at and before the time the same was entered into, and approved it; that pursuant to the contract and approval, Wheeler and the defendant, under the license, and by the authority of Wheeler, entered upon the land and erected a portable sawmill, and cut trees and sawed lumber—being the grievances set up in the complaint—all with the consent of Wa-co-co-nah, which are the supposed trespasses complained of.

Wheeler answered: first, the general denial; second, certain matters in justification of acts mentioned in the paragraph of the answer; but there is no averment that the acts justified were the acts complained of, nor is there anything alleged from which it can be inferred. This paragraph concludes with a prayer that it be taken as an affidavit against the temporary restraining order, and, perhaps, was good for that purpose, but as an answer was bad on demurrer, because it professed to answer the whole action.

Demurrers were sustained to the second and third paragraphs of Fowler's answer, and this is assigned for error.

It is attempted to sustain the ruling below, on the ground that Me-shing-go-me-sia held the land in trust and that as trustee he had no power to license the defendants to do the acts charged in the complaint.

Under the treaty the legal title to the land was vested in the appellee in trust for himself and the other members of his band.   Both Me-shing-go-me-sia and Wa-co-co-nah were tenants in common with the other members of the band, of the land in question.   One tenant in common may be liable to his co-tenant for waste; but certainly the owner in fee of an undivided interest in land cannot maintain an action of trespass against one whom he has himself licensed to do the act complained of.   It is difficult to see how Me-shing-go-me-sia could maintain this action over the facts set up in the second and third paragraphs of Fowler's answer.

It is by no means clear that the acts complained of amount to waste.   The rule as to waste is laid down in *Dawson* v. *Coffman*, 28 Ind. 220.   The averment in the complaint that the trees cut, "as a part of the inheritance to which they attached, are not capable of being valued," is not an allegation that the land as an inheritance was thereby diminished in value.   It may be that the trees cut were incapable of being valued as an inheritance for the reason that as such they had no value whatever; and, moreover, it could be, in the face of the averment, that the land freed from the trees was of more value without than with them.

This large tract of land, of some ten sections, was granted by the United States (to whom it had been ceded), to the plaintiff in fee, for himself and the other members of his band. It was wild land.   The doctrine of the common law as to waste could have no application to the members of the band.   It was competent to change the forest into cultivated fields; to build houses on the land; to occupy and cultivate it in convenient portions; in short, to use it as a prudent farmer would do with his own land.   The trees of our large forests are common articles of traffic.   In the improvement and development of a new country they are as much an article of trade as the annual crops.   There is nothing in the complaint, or in the answer, to show that either the appellant or Wa-co-co-nah transcended the power of dominion

vested in them over the land in question in the license and contract set up in the answer.

There was a trial and a verdict for the plaintiff against the appellants. A motion for a new trial was overruled. The evidence, however, is not in the record.

It is claimed that the same matters set up in the answer to which the demurrers were sustained could have been given in evidence under paragraphs of the answer subsequently filed by the same defendant; but these facts, and much more, were necessary to sustain the allegations of the subsequent paragraphs. It must be held, nothing appearing to the contrary, that the court below tried the case on the theory of the law as ruled on the demurrers in making up the issues.

The appellant claims that the complaint is defective in not showing title in the plaintiff. It is argued that the treaty of November 6th, 1838, vested the fee in the band of Ma-to-sin-ia, and that the subsequent grant to Me-shing-go-me-sia by the United States passed no title.

This position cannot be maintained. The ultimate title was in the United States, with the right of occupancy in the Miami tribe of Indians; by the treaty of 1838 the Indian tribe ceded to the United States their right in certain territory named, but from this cession there was reserved by the tribe, for the band of Ma-to-sin-ia, the land in question. Now, the land thus reserved stood precisely as it did before the cession, so far as the ultimate title was concerned. It was left subject to a future cession to the United States. Moreover, the grant made to Me-sing-go-me-sia in trust for his band was not inconsistent with the previous reservation. Me-sing-go-me-sia was the son of Ma-to-sin-ia, and a member of the band of the latter. The grant was to the same band for whom the reservation was made.

The court below erred in sustaining the demurrers to the second and third paragraphs of Fowler's answer. But as the second paragraph of Wheeler's answer was not pleaded in

bar of the trespasses complained of, there is no available error for him that ought to reverse the judgment for the damages assessed by the jury.

So far as the judgment for damages is concerned against the appellant Wheeler, the same is affirmed with costs. The residue of the judgment is reversed, with costs, and the cause remanded, with directions to overrule the demurrers to the second and third paragraphs of Fowler's answer, and for further proceedings.

*J. U. Pettit* and *T. T. Weir*, for appellants.

*N. O. Ross* and *R. P. Effinger*, for appellee.