**William T. COWART, Appellant**
(Petitioner below),

v.

**Cathy Jo (Cowart) WHITE, Appellee**
(Respondent below).

No. 29S02–9906–CV–355

Supreme Court of Indiana.

June 22, 1999.

---

Nancy G. Endsley, Indianapolis, Indiana, Attorney for Appellant.

Eric J. Benner, Noblesville, Indiana, Attorney for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

Shortly after a dissolution decree was entered the husband filed a bankruptcy petition and was subsequently discharged. We hold that the dissolution court may enforce duties to sell and divide property imposed by the dissolution decree through contempt without violating the bankruptcy injunction. The court may also award damages based on actions taken after the husband's bankruptcy was converted to Chapter 7. Finally, some payments under the decree may be nondischargeable because they were "in the nature of maintenance or support." We remand to the trial court to determine when the contemptuous actions took place and whether certain amounts awarded in the decree were in the nature of maintenance or support.

### Factual and Procedural Background

The marriage of William T. Cowart and Cathy Jo White was dissolved by decree on October 7, 1996 (the "1996 decree"). Cowart was given physical custody of the only child of the marriage and White was ordered to pay child support in the amount of $53 per week. The couple owned their marital residence and three other pieces of real estate. The 1996 decree awarded the marital residence to Cowart [1] and one of the three properties to White. The remaining two properties were ordered to be sold, with the first $35,000 of proceeds to be distributed to

---

1. The initial decree did not explicitly distribute the marital residence, but the calculations of the trial court suggested that the court intended the residence to go to Cowart. The court issued an order on March 21, 1997, correcting the 1996 decree to show distribution of the marital residence to Cowart.

White and the balance divided 60% to White and 40% to Cowart. Cowart was ordered to pay past due property taxes and White's attorney fees and to reimburse White for real estate appraisal fees and the utilities and taxes she had paid during the dissolution proceeding. The 1996 decree provided that if Cowart failed to pay these amounts they would be reimbursed from his share of the proceeds of the sale of the two pieces of property.

Eight days after the 1996 decree was entered, Cowart filed in bankruptcy. His Chapter 13 petition was converted to Chapter 7 on November 5, 1996. Both White and her attorney were listed as creditors on Cowart's bankruptcy schedule but neither filed a complaint with the bankruptcy court. The record is silent on their reasoning in foregoing the opportunity to challenge Cowart's discharge of these debts. *See, e.g.,* 11 U.S.C. § 523(a)(15) (1994 & Supp.1996). The bankruptcy court granted Cowart a discharge on February 14, 1997.

On April 9, 1997, White filed a petition in the dissolution court to modify the 1996 decree and also requested that the court find Cowart in contempt of the 1996 decree. Cowart responded with a request that the court find White in contempt. After a hearing, the trial court issued a written order (the "1997 order") denying White's motion to modify but finding Cowart in contempt "for failure to abide by the Orders of this Court and for willfully and recklessly causing the real estate in this case to fall into a state of disrepair resulting in severe economic hardship to [White]." To compensate White for Cowart's contempt, the court ordered that the marital residence be given to White and also entered judgment against Cowart for an additional $36,270, representing the sum of attorney fees for both the dissolution and the contempt proceeding, the unreimbursed appraisal fees from both proceedings, back taxes, and the loss in property value caused by Cowart's contemptuous acts to the extent that the loss was not compensated by transfer of the marital residence.

Cowart appealed, contending that: (1) the trial court lacked jurisdiction to modify the property settlement embodied in the 1996 decree; (2) the trial court violated the bankruptcy discharge injunction by finding Cowart in contempt for discharged obligations; (3) the trial court abused its discretion in finding Cowart in contempt; and (4) the trial court improperly awarded attorney fees. The Court of Appeals held that (1) the trial court impermissibly modified a final judgment in its contempt order; (2) Cowart's bankruptcy was effective to discharge the obligations found in the 1996 decree; and (3) the trial court improperly exercised its contempt power in attempting to enforce a money judgment. It remanded the issue of attorney fees for the contempt proceeding to the trial court. We now grant White's petition for transfer.

The trial court's sanctions for Cowart's failure to perform various obligations under the 1996 decree raise a number of different issues. If the obligation was imposed by the 1996 decree and was an obligation to pay a fixed sum of money, the first question is whether the obligation was discharged in bankruptcy. If so, that is the end of the issue. If the obligation was not discharged, as an obligation to pay money it is enforceable through execution, but not through contempt. If the obligation did not include a requirement to pay a fixed sum of money, it was a proper subject for contempt and the issues are whether contempt was supported by the facts and whether the trial court selected a proper remedy for contempt.

We conclude that some of the obligations in the 1996 decree were discharged, some were not, and some require further determination by the trial court. We also conclude that the trial court was within its discretion in holding Cowart in contempt for post-bankruptcy actions. We affirm the trial court's award of attorney fees and appraisal fee for the contempt proceedings but remand for a calculation of the damages resulting from Cowart's contempt.

## I. The Effect of the Bankruptcy Discharge

Cowart argues that the trial court's contempt order violates his bankruptcy discharge injunction because it is an attempt to enforce obligations that were previously discharged. A bankruptcy discharge voids any

judgment based on the personal liability of the debtor and operates as an injunction against an action to recover any discharged debt. *See* 11 U.S.C. § 524(a) (1994 & Supp. 1996).[2]

### A. *The Obligation to Sell Two Properties*

■ The trial court's division of property was not affected by Cowart's bankruptcy because Cowart's ongoing obligation to sell and divide the proceeds of the sale with White was not a "debt" as defined by the bankruptcy code. *See In re Peterson*, 133 B.R. 508, 511 (Bankr.W.D.Mo.1991) (obligation to sell property and remit half of net sale to former wife was not "debt" under bankruptcy code); *In re Marriage of Seligman*, 14 Cal.App.4th 300, 18 Cal.Rptr.2d 209, 214 (1993) (court ordered division of property requiring performance rather than payment is not a "claim" as defined by the bankruptcy code). Otherwise stated, the trial court's 1996 decree awarded White a property right in the proceeds that could not be disturbed by Cowart's bankruptcy. This is a corollary of the general proposition that a discharge in bankruptcy does not divest nondebtors of their property rights. HENRY J. SOMMER & MARGARET DEE MCGARITY, COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.02[3] (1998). Although other obligations found in the 1996 decree may constitute debts that were dischargeable in bankruptcy, the obligation to divide the sale proceeds was not a debt discharged by Cowart's bankruptcy.

### B. *Cowart's Remaining Obligations under the 1996 Decree*

The Bankruptcy Code explicitly excepts some of a debtor's obligations from discharge. Section 523(a)(5) provides that no discharge applies to any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree or oth-

er order of a court of record...." 11 U.S.C. § 523(a)(5) (1994 & Supp.1996); *see also* 6 GOLDSTEIN ET AL., COLLIER ON BANKRUPTCY ¶ 727.01[1] (15th ed. 1996) & 4 GOLDSTEIN ET AL., COLLIER ON BANKRUPTCY ¶ 523.11[1] (15th ed.1996).

■ Federal law governs what constitutes a nondischargeable "maintenance or support" obligation. *In re Hart*, 130 B.R. 817, 835 (Bankr.N.D.Ind.1991); SOMMER & MCGARITY, *supra*, at ¶ 6.03[2]. State courts nonetheless have concurrent jurisdiction to make that determination. 4 GOLDSTEIN, *supra*, at ¶ 523.03. The trial court found that "the obligation[s] of the Petitioner herein are not dischargeable in bankruptcy" because "all obligations owed to [White] are in the nature of support and maintenance."

■ To be nondischargeable an obligation must be payable to or on behalf of a former spouse and must also be "in the nature of alimony, maintenance or support." *In re Scott*, 194 B.R. 375, 378 (Bankr.D.S.C. 1995). Whether the obligation is in the nature of maintenance or support is determined by the underlying reason the debtor is required to make the payment. *Id.* at 379. As a general proposition, if the obligation was created to provide for the daily needs of the former spouse it is in the nature of alimony, maintenance or support. 4 GOLDSTEIN, *supra*, at ¶ 523.11[6][b]; *see also In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). In contrast, if the payment obligation is directly linked to the sale of identifiable property, the obligation is more likely to be part of property division and therefore dischargeable. 4 GOLDSTEIN, *supra*, at ¶ 523.11[6][c]. Finally, an obligation to be paid in a lump sum or over a short period of time is more likely to be considered a property settlement. *Id.* at ¶ 523.11[6][e].

■ The trial court reasoned that "all obligations" under the 1996 decree were in the nature of maintenance or support because

---

**2.** Cowart's discharge covers only debts that arose prior to the conversion of his bankruptcy case from Chapter 13 to Chapter 7. *See* 11 U.S.C. §§ 348(b), 727(b) (1994 & Supp.1996). Thus, any debts that arose after November 5, 1996, have not been discharged. A Chapter 7 discharge does not cover debts that are in the na-

ture of maintenance or support of a child, spouse, or former spouse. *See id.* at § 523(a)(5). Other debts incurred in a divorce may be excepted if the creditor timely files a complaint during the bankruptcy seeking to have them declared nondischargeable. *See id.* at §§ 523(a)(15), 523(c)(1).

Cowart's failure to pay his obligations under the decree in turn affected White's ability to pay child support back to Cowart. This ground is not a proper basis for concluding that the obligations are nondischargeable. The fact that the payment by the debtor may result in the former spouse's having funds available to pay child support is not sufficient to render the obligation one "in the nature of maintenance or support." *See In re Calhoun*, 715 F.2d at 1108–09 (maintenance or support is not broad enough to encompass joint debts, which if paid by one provides the other funds with which to support himself or herself).

Some of the obligations found in the 1996 decree may nonetheless be nondischargeable as maintenance or spousal support for other reasons. In this case the trial court ordered Cowart to pay several items as damages. These included property taxes paid by White, appraisal fees paid by White, attorney fees owed to White's dissolution counsel, a Visa bill that predated the dissolution, and the amount due to White as damages for failing to carry out the order to sell the two properties. The initial question is which of these, if any, survived Cowart's bankruptcy discharge.

### 1. Obligation to Pay Pre-dissolution Debts of the Couple

■ The 1996 decree ordered Cowart to pay $1,171 in back property taxes to redeem the property awarded to White and an unspecified amount of past due taxes on the other properties that he had been initially ordered to pay in the preliminary order. Cowart failed to pay the taxes and White paid them in an effort to prevent tax sales. The 1997 order ordered Cowart to reimburse White for these amounts.

The obligation to reimburse White for back taxes is not nondischargeable in the nature of a "maintenance or support" obligation. The 1996 decree essentially divided the responsibility to pay the debts of the marriage between Cowart and White. The court assigned the responsibility to pay the taxes to Cowart. There is no indication that the trial court intended this obligation to be in the nature of maintenance or support. More-

over, the taxes cannot be characterized as providing for White's daily needs because they do not secure her residence. In sum, Cowart's obligation to White to pay the taxes under the 1996 decree was discharged as a pre-petition debt.

■ The trial court also ordered Cowart to pay the Visa bill in the 1997 order. The Visa bill was a pre-petition debt that was discharged by Cowart's bankruptcy.

### 2. Dissolution Attorney Fees

■ The 1996 decree ordered Cowart to pay White's dissolution attorney fees in the amount of $14,521. The obligation to pay attorney fees may be nondischargeable in bankruptcy if it is in the nature of maintenance or support. *See In re Balvich*, 135 B.R. 327, 338 (Bankr.N.D.Ind.1991), *aff'd* 135 B.R. 323 (N.D.Ind.1991); *In re Knabe*, 8 B.R. 53, 56–57 (Bankr.S.D.Ind.1980). In exercising its discretion to award attorney fees under Indiana Code § 31–15–10–1, a trial court is required to consider the resources of the parties, their relative economic circumstances, and their ability to engage in gainful employment and earn adequate income. *Barnes v. Barnes*, 549 N.E.2d 61, 66 (Ind.Ct.App.1990); *Euler v. Euler*, 537 N.E.2d 554, 557 (Ind.Ct.App.1989). Accordingly, federal courts have held that an award of attorney fees "based on the financial resources of the parties, ... ordinarily indicates that the award is in the nature of maintenance or support." *In re Balvich*, 135 B.R. at 337 (quoting *In re Kijewski*, 91 B.R. 48, 50 (Bankr.N.D.Ill.1988)). In contrast, if attorney fees are not based on financial need they will be found to be property settlement debts dischargeable under section 523(a)(5). SOM-MER & MCGARITY, *supra*, at ¶ 6.05[1].

■ In this case, the trial court's 1996 decree awarded a larger share of the property sale proceeds to White observing that White worked only part-time during the marriage and that the Court of Appeals had approved a similar distribution where the husband had "superior or future earning ability." The trial court did not make a similar observation as to the relative earning power of the parties when it awarded attorney fees.

A court may order a former spouse to pay "rehabilitative maintenance" for a period of up to three years after considering: the education level of each spouse, whether an interruption in training or employment was a result of homemaking or child care responsibilities, the earning capacity of each spouse and the time and expense necessary for the spouse to acquire sufficient education and training to find appropriate employment. *See* IND.CODE § 31–15–7–2(3) (1998). Although the trial court clearly had discretion to award the attorney fees as maintenance, we are unable to conclude whether the fees were awarded as "maintenance or support." Because, as explained below, a remand is necessary for other reasons, we leave it to the trial court to resolve whether the award of attorney fees was designed to provide White with resources to assist her in maintaining her lifestyle after dissolution or, in other words, maintenance. If so, Cowart's obligation to pay those fees survived his bankruptcy and Trial Rule 69 is available to enforce this obligation under the 1996 decree against Cowart.

### 3. *Appraisal Fees*

 The trial court ordered Cowart to reimburse White for real estate appraisal fees in the amount of $400 for the dissolution proceeding and $400 for the contempt proceeding. The fee for the contempt appraisal was incurred after Cowart converted to Chapter 7, so his discharge does not affect that debt. However, the fee incurred as part of the dissolution was a prebankruptcy debt that was discharged unless it was in the nature of maintenance or support. The appraisal fee was to be paid to White in a lump sum and was reimbursement for a specific transaction. As such it did not provide for White's "daily needs." Unlike attorney fees, the trial court was not required to consider the economic condition of the parties in ordering Cowart to pay this cost. Accordingly, the appraisal fee incurred in the dissolution proceeding was not in the nature of maintenance or support and was discharged by Cowart's bankruptcy.

In sum, with respect to the monetary obligations under the 1996 decree, we conclude that Cowart's obligations to pay property taxes, the Visa bill and the appraisal fee for the dissolution were discharged in bankruptcy. We remand for a determination whether the attorney fees were in the nature of maintenance or support. In addition, other obligations Cowart incurred after November 5, 1996, including the real estate appraisal fee for the contempt proceeding, were not discharged.

### II. The Contempt Power of the Trial Court

Cowart contends that the trial court's 1997 order finding him in contempt constituted an impermissible modification of the 1996 decree. Cowart is correct that finality is an important value of our legal system. *See McIntosh v. Monroe*, 232 Ind. 60, 111 N.E.2d 658 (1953). However, in significant part, the contempt consisted of activities that in one way or another frustrated the court's directive to sell the two remaining properties and divide the proceeds. Except as it purports to transfer the marital residence to White the 1997 order does not modify the 1996 decree. Rather, in holding Cowart in contempt for post dissolution actions, the 1997 order arose from a separate contempt proceeding in which each party complained of the other's failure to comply with the 1996 decree. Thus the issue becomes first whether the finding of contempt was proper and if so, whether an appropriate remedy was ordered by the court.

 Contempt is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party. *Duemling v. Fort Wayne Community Concerts, Inc.*, 243 Ind. 521, 524–25, 188 N.E.2d 274, 276 (1963); *see also* 17 C.J.S. *Contempt* § 6 (1963) (civil contempt is failing to do something ordered to be done by a Court in a civil action for the benefit of an opposing party).[3] Whether a party is in contempt is a matter left to the discretion of

---

**3.** Criminal contempt is aimed at vindicating the public authority of the court. *Id.* at § 7. Although similar in nature, the purpose of the trial court's contempt finding in this case was to enforce White's rights under the 1996 decree and provide remedies to her for Cowart's contempt.

the trial court. *Crowl v. Berryhill,* 678 N.E.2d 828, 830 (Ind.Ct.App.1997); *State ex rel. Prosser v. Indiana Waste Sys. Inc.,* 603 N.E.2d 181, 185 (Ind.Ct.App.1992). We reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support it. *Shively v. Shively,* 680 N.E.2d 877, 882 (Ind.Ct.App.1997); *Meade v. Levett,* 671 N.E.2d 1172, 1181 (Ind. Ct.App.1996).

▇▇▇ Cowart, citing *Pettit v. Pettit,* 626 N.E.2d 444 (Ind.1993), argues that money judgments may not be enforced through contempt proceedings. *Pettit* held that child support obligations may be enforced through contempt. Many cases state that contempt may not be used to enforce a decree ordering one party to pay the other a fixed sum of money. *See, e.g., State ex rel. Shaunki v. Endsley,* 266 Ind. 267, 362 N.E.2d 153 (1977) (alimony judgment); *Bahre v. Bahre,* 248 Ind. 656, 230 N.E.2d 411 (1967) (attorney fees). However, in each case the issue was not whether contempt was available as a sanction for failing to pay a fixed amount. Rather, they deal with the constitutional prohibition against "imprisonment" for debt. Civil sanctions, including additional civil damages, are not prohibited by Article I, § 22 of the Indiana Constitution. Nonetheless, because parties may enforce obligations to pay a fixed sum of money through execution as provided in Trial Rule 69, all forms of contempt are generally unavailable to enforce an obligation to pay money. *Pettit,* 626 N.E.2d at 447; *Marsh v. Marsh,* 162 Ind. 210, 212, 70 N.E. 154, 155 (1904) (fact that a judgment may be enforced by execution creates strong implication against more drastic remedy of contempt).

▇▇▇ More importantly to this case, contempt may be used to enforce a court's decree that a party transfer property to the other. *State ex rel. Dale v. Superior Court of Boone County,* 260 Ind. 661, 299 N.E.2d 611 (1973) (court may enforce decree ordering transfer of property by contempt). Indiana Code § 31–15–7–10 explicitly provides that "Notwithstanding any other law, all orders and awards contained in a dissolution of marriage decree ... may be enforced by: contempt...." This statute is certainly subject to the constitutional prohibition on imprisonment for debt. But Cowart points to no other bar, and we find none, to a court's use of contempt to enforce an order that requires performance instead of payment or to the use of sanctions other than imprisonment. The 1996 decree's directive to sell and divide property is therefore enforceable by contempt. As explained further below, the trial court's finding of contempt was based on Cowart's actions and failures to act resulting in lost property value, not on his failure to pay financial obligations. Accordingly, the trial court's use of contempt power to compensate White for Cowart's actions was not prohibited.

### A. Contempt Finding

▇▇▇ The trial court held Cowart in contempt "for failure to abide by the Orders of this Court and for willfully and recklessly causing the real estate in this case to fall into a state of disrepair resulting in severe economic hardship to the Respondent." The trial court also found that Cowart refused to turn over the properties to White or permit the properties to be sold.

These findings are supported by White's testimony that Cowart would not quitclaim the Cherry Street property to her or give her keys to that or other property. White also testified that Cowart prevented her access to the property by threatening her and calling the police when she did go on the property, denying access to the real estate agent appointed by the court to sell property, and taking down the "for sale" signs. Although Cowart denied much of White's testimony, the trial court credited White and we *defer to the trial court's determination of the credibility of witnesses. Ind. Trial Rule 52.*

▇▇▇ Cowart contends that he cannot be held in contempt because the 1996 decree did not order him to maintain the rental properties. It is true that the 1996 decree did not explicitly order Cowart to maintain the properties. However, it ordered the parties to "carry out the terms of this Decree of Dissolution of Marriage and execute whatever documents are necessary to give full force and effect to the Judgment of the Court."

Although the order does not specifically order Cowart to refrain from causing the properties to become devalued, that obligation is implied in the trial court's order to sell the property and divide the proceeds, which was based on the value of the property at the time of the decree. We conclude that the terms of the decree included taking reasonable steps to preserve the value of the property to adequately compensate both parties, and certainly precluded willful acts to devalue the property. Moreover, Cowart's post-decree actions created an obligation to preserve the value of the property. When Cowart prevented White from caring for the properties herself, he assumed complete control and a corresponding duty to maintain the property on her behalf. A tenant in common may be liable to his cotenant for waste. *Wheeler & Another v. Me–Shing–Go–Me–Sia,* 30 Ind. 402, 405 (1868). Cowart's actions amount to permissive waste which results from negligence or omission to do that which would prevent injury. *See Finley v. Chain,* 176 Ind.App. 66, 82, 374 N.E.2d 67, 79 (1978).

In sum, Cowart's actions violated both the spirit and the letter of the dissolution decree and the trial court was within its discretion in finding Cowart in contempt.

### B. *Remedy*

Once a party has been found in contempt, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt. *Thomas v. Woollen,* 255 Ind. 612, 266 N.E.2d 20 (1971); *Hancz v. City of South Bend,* 691 N.E.2d 1322 (Ind.Ct.App.1998). In determining an amount of damages "[t]he inconvenience and frustration suffered by the aggrieved party" are to be taken into account. *Thomas,* 255 Ind. at 616, 266 N.E.2d at 22. The trial court's contempt remedy was aimed at compensating White both for the loss in value of the properties and for other debts she paid that Cowart was ordered to pay in the 1996 decree.

The trial court found that the properties had been so devalued by Cowart's actions that there was not enough equity to provide White with the amount she would have received from the 1996 decree. The trial court then ordered Cowart to quitclaim the former marital home to White as a remedy for its contempt finding. The court also ordered Cowart to pay $21,162.60 to White for the balance of the property settlement due to her.

As already noted, and as Cowart concedes, the property division set out in the 1996 decree is still valid. At the time the properties are sold, White will receive the first $35,000 and 60% of the remaining proceeds. In addition, Cowart can be held liable for the loss in value to the property.

However, because Cowart's bankruptcy discharged all pre-petition debts, only Cowart's actions after the conversion date of November 5, 1996, are grounds for contempt damages. It is unclear from the record whether all of Cowart's actions that led to the reduced property value occurred after this date and thus we cannot conclude that the entire difference in value of the property from the time of the conversion to Chapter 7 to the contempt hearing is attributable to Cowart's post-petition behavior. Accordingly, we remand to the trial court for a factual determination on this issue. Once the trial court determines when Cowart's actions took place, it can calculate contempt damages based on the difference between the proceeds White would have received at the time of the conversion to Chapter 7 and those she will receive from the current value of the properties.

Although we appreciate the trial court's frustration with Cowart and the court's ongoing struggle to obtain compliance with its orders,[4] the proper remedy for Cowart's contempt is a judgment for damages rather than an award of the marital property to White. *See Thompson v. Thompson,* 458 N.E.2d 298, 300–301 (Ind.Ct.App.1984) (court's shifting of property to compensate for contempt was improper, court should have ordered payment of fixed sum to com-

---

4. The 1996 decree noted that Cowart had been held in contempt for failure to comply with the preliminary dissolution decree as early as 1995.

pensate wife for loss caused by husband's failure to comply). White is of course free to pursue her remedies under Trial Rule 69 to enforce a money judgment against the property in Cowart's hands.

 The trial court also ordered Cowart to pay the appraisal fee incurred in the contempt proceeding. This fee was necessary because Cowart failed to maintain the property and is properly considered as part of White's special damages. *See Clark v. Atkins*, 489 N.E.2d 90, 98 (Ind.Ct.App.1986) (damages based on unnecessary expenses occasioned by action of party in contempt were proper); 6 I.L.E. *Contempt* § 8 (1958) (fine is proper in civil contempt so long as it compensates the complainant). The trial court did not abuse its discretion in ordering Cowart to reimburse White for this fee.

In sum, we affirm the trial court's finding of contempt. We reverse the trial court's contempt damages award to the extent it includes the property taxes and the dissolution proceeding appraisal fee. We affirm the trial court's contempt damage award of the appraisal fee for the contempt proceeding. We remand for a determination of whether Cowart's actions took place after his conversion to Chapter 7, reconsideration of damages based on Cowart's actions that led to a devaluation of the property and a money judgment for the total contempt damages.

### III. Attorney fees

 The trial court ordered Cowart to pay White's attorney fees for the contempt proceeding in the amount of $2,500. Cowart contends that he should not have to pay attorney fees for "improper" litigation and for "relitigation" of matters already decided. As explained above, the contempt proceeding was a distinct proceeding from the previous dissolution proceeding and property division. It was not "relitigation." It is not improper for a party to attempt enforce his or her rights under a court's order through contempt. We have previously held that attorney fees are available in civil contempt proceedings and affirm the trial court's award of fees in this case. *Thomas v. Woollen*, 255 Ind. 612, 615, 266 N.E.2d 20, 22 (1971); *Crowl v. Berryhill*, 678 N.E.2d 828, 831 (Ind. Ct.App.1997).

### Conclusion

The trial court's finding of contempt and order to pay attorney fees is affirmed. This case is remanded for proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.