In re The Marriage of Mark C.
**DAWSON, Appellant–
Respondent,**

v.

**Karen A. DAWSON, Appellee–
Petitioner.**

**No. 32A05–0305–CV–226.**

Court of Appeals of Indiana.

Dec. 31, 2003.

---

William O. Harrington, William O. Harrington, P.C., Danville, IN, Attorney for Appellant.

Deborah K. Smith, Martin & Smith, Thorntown, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Mark C. Dawson (Mark), appeals the trial court's order finding him in contempt of court for failing to satisfy the second mortgage on the marital residence per the Summary Decree of Dissolution (Dissolution Decree).

We affirm.

## ISSUE

Mark raises two issues on appeal, which we restate as the following three issues:

1. Whether the trial court erred by invoking its contempt power to enforce a provision of the Dissolution Decree that required Mark to satisfy the second mortgage on the marital residence;

2. Whether the trial court abused its discretion by finding Mark in contempt; and

3. Whether the trial court abused its discretion in the sanction imposed on Mark.

## FACTS AND PROCEDURAL HISTORY

The marriage of Mark and Karen Dawson (Karen) was dissolved by decree on September 24, 1999. In its Dissolution Decree, the trial court incorporated the terms of Mark and Karen's Settlement Agreement Regarding Property Division, Child Custody, Child Support, and Visitation (Settlement Agreement) filed on September 17, 1999. Pursuant to the Dissolution Decree, Karen received legal and primary physical custody of the couple's only child, subject to Mark's visitation rights. Mark agreed to pay child support in the amount of $218 per week, which included Mark's payments towards the child's private school education.

Karen received the marital residence and Mark was to quitclaim his interest in the property within seven days of the trial court's approval of the Settlement Agreement. In addition, the Dissolution Decree ordered Karen to assume full responsibility for the first mortgage on the marital residence and ordered Mark to accept full responsibility for the second mortgage. In particular, Mark agreed to liquidate $25,000 he had in an account and apply that money toward the $48,000 balance of the second mortgage on the marital residence within seven days of the trial court's approval of the separation agreement. Thereafter, Mark was to "satisfy the outstanding balance of the second mortgage on or before October 1, 2001," and to "hold Karen harmless from all liabilities, including attorney fees and costs of collection arising from this obligation." (Appellant's App. p. 84). The language of the Settlement Agreement incorporated into the Dissolution Decree specifically provided that Mark's "assumption of debt is necessary to assist Karen in meeting her daily needs." (Appellant's App. p. 83). Moreover, the provision concerning Mark's assumption of full responsibility for the second mortgage contained the following language: "[p]ursuant to the recent amendments to the U.S. Bankruptcy Code, Karen and Mark intend that Mark's obligation under this subparagraph shall not be dischargeable in bankruptcy." (Appellant's App. p. 84).

On September 29, 1999, Mark liquidated his account and paid $25,000 towards the balance of the second mortgage. Approximately one year after the date of the Dissolution Decree, Mark filed for bankruptcy. As agreed, Mark did not list the second mortgage on the marital property as a debt in his bankruptcy. From the date of the Dissolution Decree until January 4, 2003, and in addition to the $25,000 lump sum payment, Mark made the following payments on the second mortgage:

| September 27, 1999 | $ 523.11 |
|---|---|
| November 11, 1999 | 205.00 |
| December 16, 1999 | 205.00 |
| January 14, 2000 | 400.00 |
| January 19, 2000 | 205.00 |
| February 17, 2000 | 205.00 |
| March 20, 2000 | 205.00 |

| | |
|---|---|
| April 14, 2000 | 205.00 |
| June 16, 2000 | 205.00 (1st payment) |
| June 16, 2000 | 205.00 (2nd payment) |
| February 26, 2002 | 925.00 |
| March 29, 2002 | 865.00 |
| April 25, 2002 | 792.00 |
| June 5, 2002 | 864.80 (in 2 payments) |
| July 15, 2002 | 873.11 (in 2 payments) |
| August 14, 2002 | 1234.21 (in 3 payments) |
| August 24, 2002 | 270.00 |
| September 30, 2002 | 1244.00 (in 2 payments) |
| October 18, 2002 | 523.21 |
| December 6, 2002 | 523.11 |
| January 4, 2003 | 523.21 |

(Appellant's Br. pp. 3–4). On January 4, 2003, the balance of the second mortgage was $19,487.10.

Earlier, on February 6, 2002, Karen filed her Motion for Rule to Show Cause. The hearing on Karen's motion was continued multiple times until it was held on February 25, 2003. The trial court issued its order holding Mark in contempt on April 11, 2003. Subsequently, on May 7, 2003, Mark filed a motion to stay enforcement of the trial court's April 11, 2003 Order.

Mark now appeals. The trial court granted Mark's motion to stay enforcement pending this appeal. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. Use of Contempt Power

■ Mark's argument on appeal is that "the trial court's contempt power, under Indiana's Dissolution of Marriage Act, is subject to Indiana's constitutional prohibition against imprisonment for debt." (Appellant's Br. p. 5). However, to properly address Mark's argument regarding the sanction imposed, we must first consider whether the trial court properly used its contempt authority in this instance.

In that regard, Mark contends that the Dissolution Decree ordered him to pay a fixed sum of money, therefore, the obligation may only be enforced through execution as provided in Indiana Trial Rule 69, not through the trial court's contempt powers. Under T.R. 69, proceedings supplemental are used as a means to remedy a defendant's failure to pay a money judgment. *Stuard v. Jackson & Wickliff Auctioneers, Inc.*, 670 N.E.2d 953, 954 (Ind.Ct. App.1996).

In support of his argument, Mark relies heavily on our supreme court's delineation in *Cowart v. White*, 711 N.E.2d 523 (Ind. 1999), of a trial court's use of T.R. 69 to enforce money judgments and the use of its contempt power to enforce performance. In *Cowart,* our supreme court clarified that, due to the prohibition against imprisonment for debt in Article I, § 22 of the Indiana constitution, and because parties may enforce obligations to pay a fixed sum of money through execution under T.R. 69, money judgments generally may not be enforced by contempt. *Cowart,* 711 N.E.2d at 531 (Ind.1999); *Marsh v. Marsh,* 162 Ind. 210, 212, 70 N.E. 154, 155 (1904) (fact that a judgment may be enforced by execution creates strong implication against more drastic remedy of contempt).

■ Nevertheless, a trial court may use its contempt power to enforce an order that requires performance instead of payment of a fixed sum to coerce a party into compliance with an underlying order or decree. *Cowart,* 711 N.E.2d at 531. In that vein, Karen asserts that relief under T.R. 69 is unavailable to her because she seeks enforcement of Mark's performance

of a provision in the Dissolution Decree, not payment of a fixed sum of money. We agree with Karen.

In the instant case, the Settlement Agreement incorporated into the Dissolution Decree contained the following provision:

> **MARITAL DEBTS.** Mark and Karen agree that Mark is in a superior financial standing and that his assumption of debt is necessary to assist Karen in meeting her daily needs and that they will, therefore, divide the marital debts as follows:
>
> . . . .
>
> b. ***The second mortgage on the Marital Residence.*** Mark agrees to accept full responsibility for the second mortgage (Union Federal) on the Marital Residence, which has a current balance of approximately Forty–Eight Thousand Dollars ($48,000.00). Mark is currently holding Twenty–Five Thousand Dollars ($25,000.00) in an account. Those funds will be liquidated within seven (7) days of the approval of this Agreement by the [c]ourt and paid against the current balance of the second mortgage. Mark shall be responsible for the remaining balance of the second mortgage and shall hold Karen harmless from all liabilities, including attorney fees and costs of collection arising from this obligation. Mark will satisfy the outstanding balance of the second mortgage on or before October 1, 2001. Pursuant to the recent amendments to the U.S. Bankruptcy Code, Karen and Mark intend that Mark's obligation under this subparagraph shall not be dischargeable in bankruptcy. The parties stipulate, as of this date (the date of this Agreement), that Husband has the financial resources and potential

earning ability to pay the current balance on this second mortgage.

(Appellant's App. pp. 83–4).

The Dissolution Decree clearly requires performance on the part of Mark to "refinance or otherwise satisfy the second mortgage at Union Federal Bank" so that the mortgage lien is removed from the marital residence and is no longer considered a debt of Karen's. (Appellant's App. p. 10). Therefore, we reject Mark's argument that the language in the Dissolution Decree requiring Mark to take full responsibility for the second mortgage is a money judgment. Moreover, although Mark refers to Karen as a "judgment creditor" in his Appellant's Brief, that is not actually the case. (Appellant's Br. p. 5). In fact, Union Federal Bank is the creditor with regard to the second mortgage and Mark is the debtor. However, the second mortgage lien encumbers Karen's property and prevents her from selling the property unless she pays the second mortgage herself to clear the title. Therefore, Mark's violation of the Dissolution Decree amounts to much more than an obligation to pay a debt; instead it creates "the inconvenience and frustration suffered by the aggrieved party" that is taken into account in *Cowart*, 711 N.E.2d at 532 (quoting *Thomas v. Woollen*, 255 Ind. 612, 616, 266 N.E.2d 20, 22 (Ind.1971)).

Thus, contrary to Mark's assertion, the trial court has the authority to find him in contempt for his failure to comply with the Dissolution Decree precisely because of his failure to perform, rather than a failure to pay a set amount of money to Karen. This determination is consistent with *Cowart*, wherein our supreme court held that the trial court's use of its contempt power to compensate White for Cowart's actions was not prohibited because the trial court's finding of contempt was based on Cowart's actions and failures to act, not on his fail-

ure to pay financial obligations. *See Co-wart,* 711 N.E.2d at 531. In fact, here, the trial court is merely ordering Mark to perform the provision in the Dissolution Decree, i.e. satisfy the second mortgage by whatever means necessary to remove it as a lien on the marital residence. The trial court was clearly within its discretion in exercising its contempt authority in the instant case.

## II. *Contempt Finding*

Next, we must determine whether the trial court abused its discretion in finding Mark in contempt. A trial court has the discretion to determine whether a party is in contempt of court. *Williamson v. Creamer,* 722 N.E.2d 863, 865 (Ind.Ct. App.2000). Therefore, our review is limited to considering the evidence and the reasonable inferences drawn therefrom that support the trial court's determination. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* A trial court's decision will only be reversed for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* When a person fails to abide by the trial court's order, he bears the burden of showing that the violation was not willful. *Id.*

Here, the trial court found Mark "willfully failed to comply with the Settlement Agreement, paragraph 10(b) which required him to 'satisfy the outstanding balance on the second mortgage on or before October 1, 2001.'" (Appellant's App. p. 10). We find ample evidence in the record that supports the trial court's determination. In particular, Mark testified at the hearing that he made approximately $50,000 per year for the three years prior to the hearing, and that his income is deposited into a checking account jointly held with his current wife. The record also reveals that Mark and his current wife

incurred a $25,000 expense in adopting a child and paid approximately $10,000 to add a room onto their home. Further, Mark testified that he has no knowledge of the balance in the joint checking account and that his current wife had the financial means to pay the adoption fee and the room addition expense herself. Mark further testified that he owns no assets, as the home where he resides belongs to his current wife and he drives a company-owned vehicle.

In approximately May and June of 2002, subsequent to his bankruptcy, Mark applied for loans with two separate lending institutions to satisfy the second mortgage on the marital residence. In each case, his loan application was denied. Mark testified that he had not attempted to obtain a loan from any other source. Also at the hearing, Karen testified that she had spoken to two or three realtors who advised her "not to put [the house] up for sale until the second mortgage is paid, because if the house is sold for some unknown reason quickly, then that second mortgage has to be paid off." (Transcript p. 39).

In its April 11, 2003 Order to Show Cause Hearing Held February 25, 2003, the trial court found as follows:

It is now February of 2003 and [Mark] has not satisfied the mortgage or even refinanced the mortgage. His efforts to comply with the [c]ourt's order have been token, at best. He has had a significant amount of time and has done very little in an attempt to satisfy or refinance the mortgage. He has not requested to borrow the money from his current wife. He provided very little, if any, information about his assets other than a statement that he is uncertain as to how much money [sic] in the joint checking account. He described himself as a good salesman but apparently is not able to convince a lending institution that he is a good credit risk. He

has not even looked into the secondary lending market. [Mark's] efforts have been inadequate. Meanwhile, [Karen] is hesitant to refinance the loan(s) on the residence she was awarded due to the uncertainty of whether she could ever recover any monies from [Mark].

(Appellant's App. p. 10). We find that the evidence presented at the hearing supports the trial court's holding Mark in contempt for failing to satisfy the second mortgage on the marital home. Accordingly, we find no abuse of discretion in the trial court's ruling. *See Williamson,* 722 N.E.2d at 865.

## III. *Remedy*

Mark contends that the trial court's order for him to serve ninety days in jail for his being in contempt of the Dissolution Decree is an abuse of discretion. Specifically, Mark argues that the trial court's order violates Article I, section 22 of the Indiana constitution, which prohibits imprisonment for debt.

First, we note that, as determined above, the trial court properly used its contempt authority in this case and did not abuse its discretion in finding Mark in contempt. As a result, the issue now before us is whether the trial court abused its discretion in the sanction it imposed on Mark. We hold that it did not.

Indiana Code section 31–15–7–10 provides:

Notwithstanding any other law, all orders and awards contained in a dissolution of marriage decree or legal separation decree may be enforced by:

(1) contempt;

(2) assignment of wages or other income; or

(3) any other remedies available for the enforcement of a court order; except as otherwise provided by this article.

In the instant case, the trial court found Mark in contempt of court for failing to satisfy the second mortgage pursuant to the Dissolution Decree. In addition to its contempt finding, the trial court ordered Mark to serve 90 days in jail unless he purged himself of the contempt by satisfying or otherwise refinancing the second mortgage in compliance with the Dissolution Decree by May 30, 2003 at 5:00 p.m. We find that this sanction is appropriate for Mark's "persistent contemptuous conduct" and has the potential to coerce him into compliance with the provisions of the Dissolution Decree. *See Mitchell v. Stevenson,* 677 N.E.2d 551, 561 (Ind.Ct.App. 1997). Furthermore, as stated above, this sanction for contempt is based on Mark's conduct in failing to perform a provision of the Dissolution Decree, not for failing to pay a money judgment. *See Cowart,* 711 N.E.2d at 531. Thus, the trial court's sanction in no way violates Article I, section 22 of the Indiana Constitution. Likewise, the trial court did not exceed its authority in its determination of Mark's sanction. *See id.* at 532. Consequently, we conclude that the trial court did not abuse its discretion in the sanctions imposed upon Mark as a result of his contemptuous inaction. *See id.* at 532–33.

## *CONCLUSION*

Based on the foregoing, we conclude that: 1) the trial court acted within its discretion in finding Mark in contempt, 2) the evidence and reasonable inference drawn therefrom support the trial court's determination, and 3) the trial court did not abuse its discretion in the sanction imposed upon Mark.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.