Eric J. INMAN, Appellant–Respondent,

v.

Tamara S. INMAN, Appellee–
Petitioner.

No. 32A01–0806–CV–274.

Court of Appeals of Indiana.

Jan. 14, 2009.

John M. Howard, Jr., Sally S. Steward, Law Offices of Howard & Lawson, Danville, IN, Attorneys for Appellant.

Douglas W. Meyer, Plainfield, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Eric J. Inman ("Husband") appeals the trial court's post-dissolution decree orders (1) granting the motion to correct errors of Tamara S. Inman ("Wife"), and (2) finding that he was in contempt.

We affirm.

### ISSUES

1. Whether the trial court erred in granting Wife's motion to correct errors.

2. Whether the trial court erroneously found that Husband was in contempt.

### FACTS

On February 16, 2006, Wife filed a petition for dissolution of marriage. The trial court heard evidence on June 6 and July 25, 2007, and issued its findings of fact, conclusions of law, and decree of dissolution of the parties' marriage on August 31, 2007. The findings detailed the parties' education and employment history, and their "agree[ment]" that Wife "would be a stay at home . mother to attend to the needs of their children and that [H]usband would be the primary wage earner." (App.51). The trial court found that Wife's "financial position [was] vastly inferior to [H]usband's at the time of the division of marital assets and that her contribution during the marriage as a homemaker and

mother was greater than normal considering the special needs of the parties' minor son, M[.], which fell disproportionately upon [W]ife due to [H]usband's traveling for business and personal pleasure," and that a "division of approximately sixty percent (60%) to [W]ife and forty percent (40%) to [H]usband [was] just and reasonable." (App.40). It found the marital estate included $102,195.25 in Husband's Genuine Partnership Plan 401(k) ("401(k)"); awarded $82,465.43 thereof to Wife and $19,729.82 thereof to Husband; and ordered Husband to "prepare and submit a Qualified Domestic Relations order ... within seven (7) days," i.e., by September 7, 2007. (App.37, 43, 44). The trial court found the marital estate also included a rental property, Site F–5 Ocean Lakes, in Myrtle Beach ("F–5"), valued at $340,000, and ordered it to be sold and that "the net sale proceeds ... divided such that [W]ife shall receive eighty-two percent (82%) and [H]usband shall receive eighteen percent (18%)," with the cost of commissions "divided equally between the parties and paid out of the net real estate sales proceeds." (App.45).

Husband did not submit the QDRO by September 7th, as ordered, but rather filed a motion to correct errors on September 20, 2007. Wife subsequently filed a motion to correct errors also.[1]

The trial court heard arguments on the parties' respective motions to correct errors on November 26, 2007, and issued its amended findings of fact, conclusions of law, and decree of dissolution on November 28, 2007. Therein, the overall 60/40 property division was affirmed; however, the specific division of the 401(k) plan and the F–5 sales proceeds was changed. The amended order specified that Wife should

---

1. Neither motion to correct errors is included in the Appendix.

receive $70,837.26 and Husband $31,357.99 of the $102,195.25 401(k), and again ordered Husband to "prepare and submit" a QDRO "within seven days," *i.e.*, by December 5, 2007. (App.65). The amended order again directed that F–5 be sold, noting that it "may sell for more or less than the estimated value," and amended the division of the proceeds such that Wife receive 60% and Husband 40% of "the net sales price." (App.64).

On February 21, 2008, still not having filed a QDRO with the trial court, Husband filed a "request" to escrow $29,600.00 of the proceeds from the pending sale (for $310,000.00) of F–5 for payment of the long-term capital gains tax that Husband would incur because of the sale.[2] (App.80). Wife filed an objection, asking the trial court to deny the request to escrow.

No hearing was held on Husband's request. However, on March 10, 2008, the trial court issued an order directing the escrow of $29,600.00 for payment of long-term capital gains tax.

On April 9, 2007, Wife filed a motion to correct errors, arguing that the order directing escrow should "be revoked and made a nullity." (App.106). Husband responded.

On April 14, 2008, Wife filed a show cause motion, alleging that Husband was in contempt of court for transferring the 401(k) to his self-directed IRA plan, *and* for removing $21,500.00 from the Huntington Bank rental account.

On May 30, 2008, the trial court held a hearing on Wife's motion to correct errors and her contempt petition. Wife testified that in violation of the terms of the trial court's order on property division, Husband had withdrawn $21,250.00 from the parties' rental account on February 6, 2008. Husband admitted the withdrawal but testified that he had believed he was entitled to withdraw that amount. He admitted that he may have "misunderstood the ruling" by the trial court in that regard. (Tr. 73). Wife testified that she had not been consulted about, had not consented to, and had not been informed by Husband of his action in late 2007 to transfer the funds in his 401(k). Husband testified that after he had terminated his 19–year relationship with his employer on October 15, 2007, he chose to roll "over the 401(k) to an IRA" at Edward Jones in his name. (Tr. 47). The exhibit tendered by Husband reflects that the rollover was executed at the end of October 2007.

On June 2, 2008, the trial court issued its order finding Husband "in contempt for withdrawing" $21,500.00 from the Huntington Bank rental account, when the decree only entitled him to withdraw $5,519.36. (App.13). It also found Husband "in contempt for transferring" the 401(k) "to an account with Edward Jones without the knowledge and consent of" Wife. (App.14).[3]

On June 4, 2008, the trial court issued its order on Wife's motion to correct errors. It noted its earlier "approv[al]" of Husband's "request to escrow funds, without a hearing or the receipt of evidence." (App.16). It further found that neither party had "presented any evidence of the

---

**2.** According to Husband's request, the long-term capital gain tax would "be assessed against him personally" because F–5 was in his "sole name." (App.81). We have no evidence in this regard, but an order of the trial court states that "on the final day of the [dissolution] hearing, all parties were aware that [F–5] was titled solely in [Husband]'s name." (App.16).

**3.** The order once again ordered Husband's counsel to prepare a QDRO "as ordered in the Court's November 28, 2007 findings and decree." (App.14).

parties' basis in" F–5; at the final hearing. Wife had submitted an appraisal establishing the value of F–5 as $340,000.00; Husband had proposed how to divide $340,000 in sale proceeds[4]; and the evidence had established Husband's "superior position to know and testify regarding possible tax liabilities" for F–5.[5] (App.16, 17). The trial count noted that it had "intended 'net sale' to include such items normally incidental to the sale of real estate such as broker's commissions, title fees, real estate taxes, mortgage pay-offs, appraisals and recording fees, and not to include capital gains taxes" (App.17–18). The trial court granted Wife's motion to correct error.

## DECISION

1. *Order on Wife's Motion to Correct Error*

■ The standard of appellate review of the trial court's ruling on a motion to correct errors "is abuse of discretion." *Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048, 1055 (Ind.2003). An abuse of discretion has occurred "if the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Bales v. Bales,* 801 N.E.2d 196, 198 (Ind.Ct.App.2004).

The parties present extensive argument and authority on the procedural issue of whether Husband's request that the trial court order an escrow of $29,600 was actually seeking a modification of the property division or was a motion to correct errors. However, we find the matter may be resolved by addressing Husband's repeated argument that the order challenged by Wife's motion to correct errors responded to what "was merely" his request that the trial court "enforce its decree," or "enforce its judgment." Husband's Br. at 14, Reply at 5.

■ Both the trial court's original and amended findings of fact, conclusions of law and dissolution decrees clearly found that the facts warranted an unequal division of the marital estate, and that this division would be in the proportion of sixty percent to Wife and forty percent to Husband. Presumably any argument by Husband challenging this initial conclusion by the trial court would have been addressed in his September 20, 2007 motion to correct errors; and Husband pressed no subsequent challenge to the November 27, 2007 order on appeal. Hence, the trial court's order of an unequal overall division of 60:40, can no longer be challenged.

The evidence before the trial court established Husband's superior economic position and financial knowledge. Husband was in a position to know what the consequences of the sale of F–5 would or could

---

4. The order states that Husband "proposed that ... F–5 be sold and that the sale proceeds first be applied to his mortgage on his personal residence, and that the balance of sale proceeds be split evenly between the parties;" and that Husband's "proposal for property division" suggested "that sales proceeds be divided such that [Wife] received $75,000 and [Husband] $265,000, enough for him to pay-off his mortgage." (App.16–17). The evidence presented to the trial court in the dissolution action is not included in Husband's Appendix. However, the foregoing statements by the trial court lead to the inference that at trial, Husband did not propose a de-

duction for payment of capital gains tax before splitting "the balance of the sale proceeds ... evenly between the parties." (App.17).

5. Both the August 31 and November 28, 2006 orders found that in December of 2005, Husband had sold another vacation property "at Myrtle Beach commonly known as B–18, which was titled in [H]usband's name alone." (App.34, 55). Such facts support the inference that Husband was familiar with the tax implications of such a sale.

be.[6] Apparently Husband, despite his sophistication in this regard, did not present evidence or argue to the trial court that his liability for capital gains taxes upon the sale of F–5 should be taken into account before determining the amount of net sales proceeds to be divided.

Husband directs our attention to authority for, and the orders' citation of, the proposition that when making a property disposition, the trial court should consider "directly or inherently and necessarily incurred tax consequences" thereof. (App.40, 61) (citing *Knotts v. Knotts*, 693 N.E.2d 962 (Ind.Ct.App.1998)). We find that the dissolution orders reflect that the trial court *was aware* of its responsibility to consider the tax consequences of the property division. Moreover, in the order appealed—which flows from Husband's request for enforcement of the order dividing the property—the trial court expressly stated that it *did not* intend that capital gains taxes be deducted in arriving at the amount of the net sales proceeds to be divided. Thus, the trial court's order supports the inference that the trial court did consider the tax consequences of the F–5 sale and determined, based upon the evidence presented, that Husband should be responsible for paying those taxes, if any.

As Husband also repeatedly notes, *Fackler v. Powell*, 839 N.E.2d 165, (Ind. 2005), held that trial courts may "interpret the terms" of their property settlement orders "to enforce them." *Id.* at 167, 168. Just as Husband argues that *Fackler* authorizes the trial court's order to escrow the funds, *Fackler* also authorizes the trial court to issue the order appealed—granting Wife's motion to correct error, and therein holding that its amended order of November 27, 2007, did not authorize the deduction for capital gains tax liability before determining the amount of net sales proceeds to be divided. Based upon the facts in this case, we cannot say that the trial court abused its discretion when it granted Wife's motion to correct errors, thereby vacating its order to escrow $29,600 from the F–5 sale proceeds for payment of capital gains taxes.

## 2. *Order on Contempt*

■ Contempt is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party. Whether a party is in contempt is a matter left to the discretion of the trial court. We reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support it.

*Cowart v. White*, 711 N.E.2d 523, 530–31 (Ind.1999) (internal citations omitted), *clarified on reh'g on other grounds*, 716 N.E.2d 401 (Ind.1999).

■ Husband argues that the trial court erred in finding him in contempt for transferring the 401(k) plan to an IRA in his name only because there was no order that forbade the transfer in that manner. Specifically, he argues that the provisional order terminated upon the issuance of the August 31, 2007 dissolution order, and that neither that order nor the amended order of November 28th expressly prohibited his action. We are not persuaded.

The August 31, 2007 order directed Husband to prepare a QDRO providing for the division of the 401(k) as specified and submit it to the trial court within seven days. Husband did not do so. Subsequently, Husband filed a motion to correct errors. Nearly three months after the August 31st order, arguments of counsel were heard,

---

6. As noted above, he had within the past two years executed another such sale.

and on November 28, 2007, the trial court amended the 401(k) amounts awarded to the respective parties but again ordered Husband to prepare a QDRO within seven days. Again, Husband did not comply with the QDRO order.

Both the original August 31st order and the amended November 28th order had personally awarded to Wife funds in the 401(k). Both ordered the submission of a QDRO to effect the division specified. A QDRO is an order "that creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a pension-play participant." 60A AM. JUR.2d Pensions § 336 (2003). Hence, after August 31, 2007, Wife had a court-ordered personal interest in the 401(k). Husband failed to comply with the order that he provide the trial court with a QDRO to create Wife's personal right to funds in the 401(k). Moreover, at the end of October 2007, Husband unilaterally acted to transfer the 401(k) from his employer, where he admitted that it could have remained, to an IRA in his name alone. This action "injured" Wife's court-ordered interest in the 401(k). *Cowart*, 711 N.E.2d at 530. Therefore, the trial court did not abuse its discretion when it held that Husband was in contempt for the transferring the 401(k) without Wife's knowledge and consent.[7]

Affirmed.

RILEY, J., and VAIDIK, J., concur.

---

7. The trial court also found Husband in contempt for his $21,500.00 withdrawal from the parties' rental account when the court's order only entitled him to withdraw $5,519.36. Husband does not challenge the contempt finding in this regard.